1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EZEKWESILI ILOPUTAIFE et al.,

  Plaintiffs,

   v.

CITY OF BEAUMONT et al.,

  Defendants.

NO. EDCV 21-1452-JWH (AGR)

REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE

  The court submits this Report and Recommendation to the Honorable John W. Holcomb, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the court recommends the disposition set forth below in the recommendation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## <u>SUMMARY OF PROCEEDINGS</u>

On August 26, 2021, Plaintiffs Ezekwesili Iloputaife ("E. Iloputaife") and Nneka Iloputaife ("N. Iloputaife"), proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against the City of Beaumont ("City" or "Beaumont"), Christina Taylor, Scott A. Fazekas, Michael Almandinger, Kelly McCarthy, and Does 1 through 20.  (Dkt. Nos. 1, 3.)

On September 20, 2021, Defendants filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 7.)  Plaintiffs filed an opposition.  (Dkt. No. 16.)  Defendants filed a reply.  (Dkt. No. 17.)  On December 6, 2021, Plaintiffs filed a request for judicial notice of continued harassment.  (Dkt. No. 18.)  Defendants filed an opposition.[1]  (Dkt. No. 19.)

The motion was taken under submission.

## II.

## <u>ALLEGATIONS IN COMPLAINT</u>

Plaintiffs are a married couple living in Beaumont.  (Compl. ¶¶ 1-2.) Plaintiff N. Iloputaife owns the property where they live.  (*Id.* at 2 & ¶¶ 2,19.)  The named individual defendants are officials of the Beaumont Community Development Department: Defendant Taylor is the director; Defendant Fazekas is a building official; Defendant Almandinger is a building inspector; and Defendant McCarthy is a code enforcement officer.  (*Id.* ¶¶ 3-6.)

On December 26, 2016, Defendant Fazekas approved a set of building plans for a 2,780 square foot structural addition to Plaintiffs' house, including a

---

[1]      Plaintiffs request that the court take judicial notice of a Franchise Tax Board Pre-Intercept Notice, dated November 26, 2021, as evidence of continued harassment by the City.  Plaintiffs' request for judicial notice is denied because the document is not relevant to the resolution of this motion to dismiss.  *See Neylon v. County of Inyo*, No. 1:16-cv-0712 AWI JLT, 2016 WL 6834097, at *4 (E.D. Cal. Nov. 21, 2016) ("if an exhibit is . . . unnecessary to deciding the matters at issue, a request for judicial notice may be denied").

1     second story dormer and a second story open terrace.  (*Id.* ¶ 13; Dkt. No. 3 at 3,

2     15.)  On May 1, 2017, the City issued a building permit.  (Compl. ¶ 13; Dkt. No.3

3     at 3-4.)  Plaintiff E. Iloputaife was the builder for the project.  Plaintiffs were living

4     in the house during the construction.  (Compl. ¶ 19.)

5            While the construction was ongoing, Defendant Almandinger had a habit of

6     verbally approving progression of the project without checking off the signature

7     and date lines on the job card.  (*Id.* ¶ 14.)

8            "At an advanced stage of construction," Plaintiff E. Iloputaife noticed that

9     the open second story terrace was dangerously close to an Edison high-tension

10    electric wire.  (*Id.* ¶ 15.)  On July 19, 2018, Plaintiff E. Iloputaife told Defendant

11    Almandinger about his fear of radiation and suggested adding a cover to minimize

12    possible radiation from the wire.  Almandinger said Plaintiffs would have to

13    provide an approved plan or obtain a variance from Defendant Taylor.  (*Id.*)

14           On August 15, 2018, Defendant Almandinger "brought Doe 11 to verify the

15    construction of approved engineered Detail 29 plan" that Almandinger had

16    "imposed" on Plaintiff E. Iloputaife "in disregard of a discrepancy with the

17    approved architectural rendering which he explained was not engineered."  (*Id.*

18    ¶ 16.)  Almandinger and Doe 11 "finished their inspections and approved the work

19    on two sections to advance to the next stage."  (*Id.*)  By then, Plaintiffs had also

20    added a roof over the terrace as he had discussed with Almandinger.

21    Almandinger and Doe 11 told Plaintiff E. Iloputaife to get approval or a variance

22    for the roof, or else he would have to remove it.  (*Id.*)  Plaintiff E. Iloputaife

23    insisted on a written instruction on the job card, which Almandinger and Doe 11

24    co-signed.  (*Id.* ¶ 17; Dkt. No. 3 at 12.)

25           For over a year, Plaintiff E. Iloputaife "sought the attention" of Defendant

26    Taylor to present his concerns and a request for a variance, but she ignored him

27    until he contacted the mayor.  (*Id.* ¶ 18.)  At a meeting on August 16, 2019, "[t]he

28    request for a variance was being denied" when Plaintiff requested "a physical

observation of his concern" by high level officials before a final decision was reached.  (*Id.*)

On September 4, 2019, Defendants Fazekas, Almandinger and Doe 11 visited the project site  (*Id.* ¶ 19.)  Defendant Fazekas walked through the home project but refused to discuss it with Plaintiff E. Iloputaife, saying that his "boss" would discuss the matter with him after Fazekas had submitted his report.  (*Id.*)

On September 10, 2019, Plaintiff E. Iloputaife received a letter from Defendant Fazekas citing three areas that needed to be addressed.   (*Id.* ¶ 20.) Defendant Fazekas stated that the following three areas were not covered by the approved plans and required approval before proceeding with construction or inspection: (1) the second story dormer pop-out window, which had been enlarged into an enclosed room, had "lateral design issues with improper seismic bracing as currently constructed," and the amount of added glazing required revised energy calculations; (2) the roof for the rear deck was not on the approved plans and had various structural issues; and (3) the stair rise/run needed corrections for the noticeably inconsistent steps.  The letter stated that revised plans should be prepared indicating the increased scope of work, and upon approval an additional permit would be issued.  (Dkt. No. 3 at 15.)

According to Plaintiff E. Iloputaife, Defendant Fazekas "negligently included" the dormer area that had been already inspected and approved by Defendants Almandinger and Doe 11 on August 15, 2018.  (Compl. ¶ 20.)  On September 11, 2019, Plaintiff E. Iloputaife replied to Defendant Fazekas' letter and asked for another on-site meeting.  (*Id.* ¶ 21; Dkt. No. 3 at 17.)  On September 12, 2019, Defendant Taylor responded that the City had provided a path for approval of the project and, if Plaintiffs chose not to take this route, they could modify the unpermitted construction to comply with the already approved plans.  "Until either the plans are modified or the unpermitted construction is addressed, the Building and Safety Department has nothing further to review or

4

1    inspect." (Dkt. No. 3 at 19.)

2        Plaintiffs contend that Defendants Taylor and Fazekas repudiated the

3    already approved construction and requested a plan resubmittal to cover up the

4    City's mistake in approving the open terrace without proper consideration of its

5    proximity to high tension wires.  (Compl. ¶ 22.)

6        On September 16, 2019, Plaintiff E. Iloputaife finished the correction on the

7    stair rise/run and requested an inspection.  (*Id.* ¶ 23.)  Although there was no

8    notice to stop work, the City "negligently ignored" his requests for inspection.

9    Eventually Plaintiff E. Iloputaife continued the construction "to avoid destructive

10   effects of weather elements."  (*Id.*)

11       On March 18, 2020, Plaintiff E. Iloputaife received a letter from the City,

12   signed by building official Pedro Rico, advising him that the building permit had

13   expired and, if he intended to continue the work, he should contact the building

14   department to resolve the issue.  (*Id*. ¶ 24; Dkt. No. 3 at 22.)  Plaintiff E. Iloputaife

15   called Rico several times "with no headway."  (Compl. ¶ 24.)  On April 17, 2020,

16   Plaintiff replied to the letter.  He stated that: the City Planning and Safety

17   departments had approved the open terrace without consideration of the radiation

18   hazard from the proximity of the high-tension wire; the City was now insisting that

19   he go through the expensive engineering and permit process again, and he could

20   not financially afford it after he had done his best to abate the hazard by adding a

21   cover to the terrace even though he preferred it open; and the City had refused

22   his requests for inspection of work done on living areas unaffected by the terrace.

23   (Dkt. No. 3 at 24.)  He complained that the City had refused to grant a variance or

24   finance the required plan modifications, and his family was exposed to inclement

25   weather due to uncompleted areas of the house.  (*Id.*)

26       On March 19, 2020, Defendant McCarthy posted a courtesy notice "of nine

27   bogus issues that never existed at the subject property." (Compl. ¶ 25.)  The

28   notice stated that if these conditions were not corrected, they would violate the

1    Beaumont Municipal Code ("BMC").  (Dkt. No. 3 at 26-28.)  Plaintiffs immediately

2    contacted the City.  Jack Huntsman from the Code Enforcement Department

3    visited the property and found no issues.  (Compl. ¶ 25.)

4           Plaintiff E. Iloputaife continued to work on the construction, taking the

5    position that the building permit had not expired and remained valid.  (Compl.

6    ¶ 27.)  On July 30, 2020, Defendant McCarthy posted a citation for a violation of

7    BMC § 8.32.060 for a $100.00 fine, and for a violation of BMC § 8.32.070 for zero

8    fine.[2]  (*Id.* ¶ 26; Dkt. 3 at 33.)  Plaintiffs requested administrative review. (Compl.

9    ¶ 26; Dkt. No. 3 at 37-40.)  The citations progressed to a daily citation of $1,000.

10   (Compl. ¶ 26; Dkt. No. 3 at 34-35.)

11          On February 26, 2021, Defendant McCarthy issued a stop work notice,

12   which was the first stop work notice issued against the property.  (Compl. ¶ 29.)

13   On March 17, 2021, Plaintiff N. Iloputaife started receiving threatening debt

14   collection letters from a debt collection agency.  (Compl. ¶ 26; Dkt. No. 3 at 43-

15   46.)  She sent responses disputing the debt.  (*Id.* at 48-50.)

16          Starting on February 26, 2021, Plaintiff E. Iloputaife made urgent requests

17   for a hearing.  (Compl. ¶¶ 30-31; *see* Dkt. No. 3 at 53-63.)  On April 14, 2021,

18   Defendant Taylor scheduled a virtual hearing before a three-person hearing panel

19   for April 22, 2021.  (Compl. ¶ 32.)  Although there are nine members, Defendant

20   Taylor postponed the hearing to May 6, 2021 to allow "a member of her choice" to

21   recover from illness and participate.  (*Id.*)  She also insisted on a virtual hearing.

22

23          [2]     The court grants Defendants' request for judicial notice of certain
24   provisions of the BMC.  (Dkt. No. 7-1.)  *See* Fed. R. Evid. 201(b); *Tollis Inc. v.*
     *County of San Diego,* 505 F.3d 935, 937 n.1 (9th Cir. 2007) ("Municipal
25   ordinances are proper subjects for judicial notice.") (citing *Santa Monica Food Not*
     *Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006)).

26          BMC § 8.32.060 provides that premises in violation of certain building
27   codes or subject to certain enumerated conditions are a public nuisance.  BMC
     § 8.32.070 provides that premises maintained contrary to the City's zoning
28   ordinance are a public nuisance.  (Dkt. No. 7-1 at 19.)

1   (*Id.*)

2          Plaintiffs presented their case at the hearing.  (*See* Compl. ¶ 33.)  The

3   panel head was biased and could be seen interacting with Defendant Taylor

4   during the hearing, with the audio cut off from Plaintiffs.  (*Id.*)  When the audio

5   came back on, the panel heard could be heard saying, "You've gotta keep 'em all

6   straight, that's for sure."[3]  (*Id.;* Dkt. No. 3 at 72.)

7          On May 25, 2021, the panel issued a decision and order to abate public

8   nuisance.  (*Id.* at 121.)  The panel found that: the building permit had expired; the

9   second story dormer was larger than indicated on the approved building plans

10  and as constructed had issues with improper seismic bracing and energy

11  efficiency; and although the second story terrace roof had been partially removed,

12  a small portion with support posts remained.  (*Id.* at 126-27.)  Plaintiff could

13  correct these issues by resubmitting revised plans including structural calculations

14  or by applying for a demolition permit to remove the work not in compliance with

15  the original plans.  (*Id.* at 126.)  The panel issued an order to abate public

16  nuisance.  (*Id.* at 127-29.)  Plaintiffs contend that the hearing panel "literally

17  incorporated" a false City staff report into their decision, "without the least

18  consideration for Plaintiffs' crucial testimony."  (Compl ¶ 33.)

19         On June 7, 2021, Plaintiffs filed a notice of appeal to the City Council.  (*Id.*

20  ¶ 34.)  They were obliged to pay $1,945.98 to have the appeal processed.  (*Id.*;

21  *see* Dkt. No. 3 at 79, 81-82.)  Plaintiffs submitted written testimony, received the

22  City staff's written responses, and submitted their rebuttal.  (Compl. ¶¶ 36; Dkt.

23  No. 3 at 85-95, 98-101, 104–06.)

24         On July 20, 2021, the appeal hearing was held before the City Council.

25  (Compl. ¶ 37.)  Plaintiffs complain that their previously submitted evidence was

26  _____

27  [3]      On appeal to the City Council, Defendant Taylor contended that the
panel head's comment referred to her difficulties with Zoom after she had

28  inadvertently muted herself, was asked to unmute and start her comments afresh,
and became flustered while "trying to get it together."  (Dkt. No. 3 at 98.)

1   not considered; they were not prepared to deliver statements of more than three

2   minutes; and Defendant Taylor read the "made-up City Staff Report" and

3   announced that the City had attached a lien on the property.  Plaintiffs were

4   intimidated by the presence of the City attorney because they had no counsel.

5   (*Id.* ¶¶ 37-38.)

6          On August 3, 2021, the City Council issued Resolution No. 2021-42 that

7   Plaintiffs characterize as "basically an elaborated version of the made-up City Staff

8   Report." (*Id.* ¶ 38; Dkt. No. 3 at 110-19.)  The City Council affirmed the

9   administrative decision.  (Dkt. No. 3 at 116.)  It found that substantial evidence

10  supported a finding that BMC §§ 8.32.060 and 8.32.070 were violated; the

11  construction activities exceeded the work permissible under the plans and permit;

12  work was done after the permit expired; and the second story rear terrace and

13  second story dormer were not in compliance with what the City had approved and

14  constituted a public nuisance under BMC § 8.32.420.  (*Id.* at 116-17.)  The City

15  Council found that Plaintiffs were liable for fines of $76,060 and attorneys fees and

16  costs in the amount of $27, 823.65, but reduced the total amount to $27,823.65 if

17  paid within 90 days.  (*Id.* at 117.)  The resolution provided that the City would not

18  seek a Superior Court order for abatement of the nuisance or appoint a receiver if

19  (1) within 30 days, Plaintiffs provided a report from a licensed structural engineer

20  certifying whether the property was safe for habitation; (2) within 90 days, Plaintiffs

21  had a licensed structural engineer prepare, submit and obtain approval of plans to

22  correct the violations and obtain a permit to complete the work; and (3) within 270

23  days, Plaintiffs completed construction and obtained final inspections and

24  approval.  (*Id.* at 117-18.)

25         Plaintiff contend that the fines are unjust and excessive, and that

26  Defendants continued to issue citations and assess fines while denying Plaintiffs

27  their right to administrative review.  (Compl. ¶ 39.)  Defendant McCarthy has "an

28  established pattern of issuing unwarranted citations against Plaintiffs' interests"

1  and has done so on previous occasions, resulting in a settlement in one case and

2  retraction of other citations.  (*Id.* ¶ 40.)  Defendants Fazekas and Does 1 through

3  10 negligently approved the building plan "despite the discrepancy between the

4  approved architectural rendering and engineered Detail 29" and despite the

5  proximity of high-tension wires.  (*Id.* ¶ 41.)  Defendant Almandinger "negligently

6  directed and insisted that [Plaintiff E. Iloputaife] strictly abide by the approved

7  Detail 29 engineered plan in the construction, after which" he approved two out of

8  three sections of the construction on August 15, 2018.  *(Id.* ¶ 42.)  Defendants

9  Taylor, Fazekas, Almandinger, McCarthy and Doe 11 conspired to repudiate the

10  previously approved work while denying Plaintiffs due process and equal

11  protection by refusing to grant their request for a variance to protect them from

12  "possible danger from radioactivity."  (*Id.* ¶ 43.)  All Defendants conspired to distort

13  the true facts and prepared false and misleading reports.  (*Id.* ¶ 44.)  All

14  Defendants are responsible for the illegal polices and practices to which Plaintiffs

15  are being subjected by the City.  (*Id.* ¶ 45.)

16     Plaintiffs assert the following claims: (1) declaratory relief; (2) violation of

17  due process and equal protection; (3) violation of Cal. Civil Code §§ 52 and 52.1;

18  (4) violation of 18 U.S.C. §§ 241 and 242; and (5) tort claims for breach of duty,

19  "intentional tort," and negligence.  (*Id.* ¶¶ 47-57.)

20     Plaintiffs seek declaratory relief, an injunction against Resolution No. 2021-

21  42, and compensatory and punitive damages.  (Compl. at 18.)

22                                        III.

23                            **LEGAL STANDARDS**

24     "To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint

25  must contain sufficient factual matter, accepted as true, to 'state a claim to relief

26  that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

27  omitted).  "A claim has facial plausibility when the plaintiff pleads factual content

28  that allows the court to draw the reasonable inference that the defendant is liable

1   for the misconduct alleged.  The plausibility standard is not akin to a 'probability

2   requirement,' but it asks for more than a sheer possibility that a defendant has

3   acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with'

4   a defendant's liability, it 'stops short of the line between possibility and plausibility

5   of "entitlement to relief."'"  *Id.* (citations omitted).

6        The tenet that a court must accept as true all of the allegations contained in

7   a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

8   elements of a cause of action, supported by mere conclusory statements, do not

9   suffice.  *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In

10  sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual

11  content,' and reasonable inferences from that content, must be plausibly

12  suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*,

13  572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

14       A *pro se* complaint is to be liberally construed.  *Erickson v. Pardus*, 551 U.S.

15  89, 94 (2007) (per curiam).  Before dismissing a *pro se* civil rights complaint for

16  failure to state a claim, the plaintiff should be given a statement of the complaint's

17  deficiencies and an opportunity to cure them unless it is clear the deficiencies

18  cannot be cured by amendment.  *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th

19  Cir. 1987).  Nevertheless, "[u]nder Ninth Circuit case law, district courts are only

20  required to grant leave to amend if a complaint can possibly be saved.  Courts are

21  not required to grant leave to amend if a complaint lacks merit entirely."  *Lopez v.*

22  *Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

## IV.

## DISCUSSION

25       Defendants have moved for dismissal on the grounds that (1) Plaintiffs fail to

26  state a viable procedural due process claim; (2) Plaintiffs fail to allege facts

27  supporting an equal protection claim; (3) Plaintiffs' claims are barred by qualified

28  immunity; (4) Plaintiffs' claims against Defendant Taylor are barred by absolute

1  prosecutorial immunity; (5) Plaintiffs have no private right of action under 18

2  U.S.C. §§ 241 and 242; (6) Plaintiffs' state law claims are barred for failure to

3  allege compliance with the California Tort Claims Act; (7) Plaintiffs fail to state

4  claims for violation of the Unruh Civil Rights Act or the Bane Act; (8) Plaintiffs fail

5  to state any tort claim; (9) Plaintiffs' state law claims are barred by immunities set

6  forth in the California Government Code; and (10) Plaintiffs cannot obtain punitive

7  damages from the City and do not allege facts supporting punitive damages

8  against the individual defendants.

9      **A. Section 1983 Claims**

10      To state a claim under § 1983, a plaintiff must allege that a specific

11  defendant, while acting under color of state law, deprived him of a right guaranteed

12  under the Constitution or a federal statute.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

13  Plaintiffs contend that Defendants violated their "Fourteenth Amendment rights to

14  procedural due process and equal protection of the laws."[4]  (Compl. ¶ 50.)

15      **1.  Due Process**

16      The Fourteenth Amendment protects individuals against the deprivation of

17  liberty or property by the government without due process.  *Portman v. Cty. of*

18  *Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  A § 1983 claim based on denial of

19  procedural due process has three elements: (1) a constitutionally protected liberty

20  or property interest; (2) deprivation of that interest by the government; and (3) lack

21  of process.  *Id.*

22      Thus, "[t]he requirements of procedural due process apply only to the

23  deprivation of interests encompassed by the Fourteenth Amendment's protection

24  of liberty and property."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564,

25  569 (1972).  "Property interests . . . are not created by the Constitution"; "they are

26

27      [4]      Although in the introductory section Plaintiffs also refer to a violation

28  of substantive due process (Compl. ¶ 10), the second cause of action expressly
alleges only a procedural due process claim.

1   created and their dimensions are defined by existing rules or understandings that

2   stem from an independent source such as state law—rules or understandings that

3   secure certain benefits and that support claims of entitlement to those benefits."

4   *Id*. at 578.  A legitimate claim of entitlement can exist when state law significantly

5   limits the decision maker's discretion or when the decision maker's policies and

6   practices create a *de facto* property interest.  *Gerhart v. Lake County, Mont.*, 637

7   F.3d 1013, 1019-20 (9th Cir. 2011); *see Bateson v. Geisse*, 857 F.2d 1300, 1303

8   (9th Cir.1988) (holding builder had protectible property interest in building permit

9   when city regulations required issuance of permit once applicant met certain

10  requirements).

11         Defendants argue Plaintiffs did not have a legitimate claim of entitlement to

12  a discretionary permit or variance for modifications that were outside the scope of

13  the original building permit, were not included in the plans and structural

14  calculations, and had not been approved.  Plaintiffs admit that the terrace roof was

15  not included in the original building plans for an open second story terrace, but

16  contend they were obliged to construct it to protect from radiation from a nearby

17  high-tension electric wire after Defendants ignored their requests for a variance.

18  (*See* Compl. ¶¶ 18-22.)

19         The California Building Code provides that "[w]ork shall be installed in

20  accordance with the approved construction documents, and any changes made

21  during construction that are not in compliance with the approved construction

22  documents shall be resubmitted for approval as an amended set of construction

23  documents."  24 Cal. Code Regs. § 107.4 [A].  (Dkt. No. 7-1 at 22.)  Regardless of

24  their reasons for proceeding with unauthorized construction, Plaintiffs did not have

25  a protected property interest in receiving a discretionary permit for a terrace roof

26  that was not in the approved plans.  *See LKS Enterprises, LLC v. City of Silverton*,

27  No. 6:16-CV-00785-MC, 2017 WL 890085, at *7 (D. Or. Mar. 6, 2017) ("KS

28  deviated from the approved building plans and admits to code violations.  It was

12

1   not entitled to any permit and lacked any protected property interest."); *See YD*

2   *Enterprises, LLC v. City of Ontario D*, No. EDCV142093PAKKX, 2015 WL

3   13919461, at *3 (C.D. Cal. Feb. 18, 2015) (dismissing procedural due process

4   claim because plaintiffs had no "property interest in a favorable inspection").

5        As for the dormer, Plaintiffs contend that, on August 15, 2018, Defendants

6   Almandinger and Doe 11 inspected and approved the dormer construction but

7   Defendants subsequently repudiated this approval so as to force Plaintiffs to

8   submit new plans in order to conceal Defendants' negligence in approving the

9   open terrace despite the radiation danger posed by the high-tension electric wire.

10  (Compl. ¶¶ 10, 16, 22.)  It is not clear whether Plaintiffs are alleging that the

11  dormer conformed to the building plans or that any discrepancy was known to and

12  approved by (or actually "imposed" by) Defendant Almandinger prior to the

13  construction.  (*See id.* ¶¶ 16, 29, 41-42.)  If Plaintiffs choose to amend their

14  complaint, Plaintiffs should clarify this point.

15       Defendants further argue that even assuming Plaintiffs have alleged a

16  protected property interest, their allegations demonstrate no violation of procedural

17  due process.  In most circumstances, due process requires a pre-deprivation

18  hearing before the government deprives a person of  a significant protected

19  interest.  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "The fundamental

20  requirement of due process is the opportunity to be heard at a meaningful time and

21  in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal

22  quotation marks and citation omitted).

23       Plaintiffs do not argue that they received insufficient notice; indeed, the

24  complaint and exhibits show they received notice of the need for amended

25  construction documents long before the first citation was issued.  (Compl. ¶¶ 16-

26  17, 20; Dkt. No. 3 at 15, 18.)  Plaintiffs received a pre-deprivation hearing before a

27  three-member administrative panel on May 6, 2021 and before the City Council on

28  July 20, 2021, and the fines assessed against them were placed on hold during

1     the pendency of these proceedings.  (Compl. ¶¶ 32-33, 37; *see* Dkt. No. 3 at 40.)

2     Plaintiffs presented their case at both hearings.  (Compl. ¶¶ 33, 37.)  Prior to the

3     City Council hearing, Plaintiffs also submitted written testimony, received the

4     responses of the City staff, and submitted a written rebuttal.  (*Id.* ¶ 36; Dkt. No. 3

5     at 86-95, 98-101, 104–06.)  Plaintiffs challenge the adequacy of these hearings.

6     They contend that "a prejudiced administrative hearing panel . . . did [Defendant

7     Taylor's] entire bid[d]ing by incorporating a falsified staff report in their decision

8     after an obviously biased virtual hearing," and the five-member City Council

9     "arbitrarily affirmed the administrative hearing panel's decision [in] the face of

10    glaring irregularities and prejudice."  (Compl. ¶ 11.)  Plaintiffs must specify each

11    "glaring irregularity" that they contend deprived them of a meaningful opportunity to

12    be heard.  Sweeping, conclusory characterizations are not enough to state a

13    plausible procedural due process claim.

14         It is recommended that Plaintiffs' due process claim be dismissed with leave

15    to amend.

16              **2.   Equal Protection**

17         The Equal Protection Clause of the Fourteenth Amendment essentially

18    requires that similarly situated persons be treated alike.  *City of Cleburne v.*

19    *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim

20    under § 1983, a plaintiff must allege that the defendant acted with an intent or

21    purpose to discriminate because of the plaintiff's membership in a protected class.

22    *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Monteiro v.*

23    *Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (plaintiff "must

24    plead intentional unlawful discrimination or allege facts that are at least susceptible

25    of an inference of discriminatory intent").  Plaintiffs contend they were

26    discriminated against on account of their race.  (Compl. ¶ 33.)

27         Plaintiffs' claim fails at the threshold level because they have not alleged

28    differential treatment.  The complaint contains no facts showing that Defendants

1   have treated Plaintiffs differently from similarly situated persons.  In their
2   opposition, Plaintiffs allege that "most of Plaintiffs' neighbors who are not African
3   Americans of Nigerian [o]rigin have unpermitted patio protective covers for the
4   same safety reason as Plaintiffs and one even included unpermitted improvement
5   structure."  (Dkt. No. 16 at 15.)  They allege Plaintiff E. Iloputaife pointed these out
6   to Defendant Almandinger, who responded that his visit only concerned Plaintiffs'
7   permit.  (*Id.* at 15-16.)  These factual allegations are not included in the complaint
8   and may not be considered in determining whether Plaintiffs have stated a claim.
9   *See Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1997 n.1 (9th Cir. 1998)
10  ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look
11  beyond the complaint to a plaintiff's moving papers, such as a memorandum in
12  opposition to a defendant's motion to dismiss." (emphasis omitted)).

13          Plaintiffs argue that a comment made by the head of the hearing panel to
14  Defendant Taylor during the May 6, 2021 hearing and caught on the audio –
15  "You've got to keep 'em all straight, that's for sure" (Compl. ¶ 33) – shows racial
16  animus against Plaintiffs.  (*See* Dkt. No. 3 at 72.)  The comment is does not
17  expressly refer to Plaintiffs or to race.  In her written responses to Plaintiffs'
18  submissions to the City Council, Defendant Taylor contended that the panel head
19  had inadvertently muted herself and subsequently made the comment in reference
20  to the challenges of running a Zoom hearing.  (*Id.* at 98.)  Regardless, even under
21  Plaintiffs' interpretation, a single ambiguous comment made by the panel head to
22  Defendant Taylor cannot plausibly allege racial animus on the part of the
23  Defendants.[5]  *See Iqbal,* 556 U.S. at 677 ("each Government official . . . is only
24  liable for his or her own misconduct.")

25

26          [5]      In their opposition, Plaintiffs allege that "sometime around January
27  20, 2021," Defendant McCarthy told him that "you people come here and behave
    like you know better than everyone else."  (Dkt. No. 16 at 14-15.)  This allegation
28  is not in the complaint and may not be considered in determining whether it states
    a claim.  *See Schneider*, 151 F.3d at 1997 n.1.

1   It is recommended that Plaintiffs' equal protection claim be dismissed with

2   leave to amend.

3   ### 3.   Defendant Taylor: Immunity

4   Defendant Taylor contends she is entitled to absolute immunity because her

5   function was analogous to that of a prosecutor.  Prosecutors are absolutely

6   immune for initiating a criminal prosecution and presenting the state's case.

7   *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).  "Absolute immunity extends to

8   agency officials when they preside over hearings, initiate agency adjudication, or

9   otherwise perform functions analogous to judges and prosecutors."  *Romano v.*

10  *Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) (citing *Butz v. Economou*, 438 U.S.

11  478, 514–15 (1978)).  Prosecutors are not entitled to absolute immunity  for

12  investigative and administrative functions, *Van de Kamp v. Goldstein*, 555 U.S.

13  335, 342 (2009), and agency officials are similarly not entitled to quasi-

14  prosecutorial immunity for such tasks.

15  Defendant Taylor argues that Plaintiffs' claims are based on her role in the

16  initiation and prosecution of their administrative hearing and appeal.  Plaintiffs,

17  however, also allege that Defendant Taylor was responsible for denial of a

18  variance and repudiation of Defendant Almandinger's alleged approval of the

19  dormer construction.  (*See* Compl. ¶¶ 18, 22.)  The factual allegations regarding

20  Taylor are that she: ignored Plaintiffs' requests for a variance (*id.* ¶ 18); assigned

21  Defendant Fazekas to respond to Plaintiffs' request to inspect the property in order

22  to cover up his negligent approval of an open terrace without consideration of the

23  proximity of high-tension wires (*id.* ¶ 22); ignored Plaintiffs' requests for review of

24  Defendant Fazekas' September 10, 2019 letter (*id.* ¶ 29); ignored Plaintiffs'

25  request for an administrative hearing (*id.* ¶ 30); eventually scheduled the hearing,

26  "organized a prejudiced administrative hearing panel," and insisted on a virtual

27  hearing (*id.* ¶¶ 11, 32); and presented evidence at both the panel hearing and the

28  hearing before the City Council (*id.* ¶¶ 26, 37).

16

1    Plainly, many of Defendant Taylor's complained-of acts were administrative

2    and fall outside the scope of quasi-prosecutorial immunity.  As for her other acts,

3    the court cannot determine at this point to what extent Plaintiffs' claims against her

4    derive from conduct shielded by absolute immunity.  Defendant Taylor may renew

5    her argument at a later stage of the action.

6              **4.  <u>Qualified Immunity</u>**

7    Because the court has concluded that the complaint fails to state a claim

8    and should be dismissed with leave to amend, it is unnecessary to address the

9    individual Defendants' contention that they are entitled to qualified immunity.

10             **B.  Federal Criminal Statutes**

11   Plaintiffs contend that Defendants violated 18 U.S.C. §§ 241 and 242.

12   (Compl. ¶ 54.)  Plaintiffs cannot assert claims under these criminal statutes, which

13   do not give rise to civil liability.  *See, e.g.*, *Allen v. Gold Country Casino*, 464 F.3d

14   1044, 1048 (9th Cir. 2006) ("We affirm the dismissal of Allen's claims under 18

15   U.S.C. §§ 241 and 242 because these are criminal statutes that do not give rise to

16   civil liability."); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980) (finding 18

17   U.S.C. §§ 241 and 242 "provide no basis for civil liability"); *Ashraf v. Reliance*

18   *Motors, LLC*, No. 2:20-cv-08506-JWH-ASx, 2020 WL 7382101, at *3 (C.D. Cal.

19   Dec. 10, 2020) (dismissing claims under §§ 241 and 242 because private citizens

20   do not have standing to pursue claims for violations of these criminal statutes).

21   It is recommended that Plaintiffs' claims under 18 U.S.C. §§ 241 and 242 be

22   dismissed without leave to amend because this defect is incurable.

23             **C.  State Law Claims**

24             **1.  <u>Compliance with California Tort Claims Act</u>**

25   Under the California Tort Claims Act, also known as the California

26   Government Claims Act ("CGCA"), a plaintiff may not bring a suit for damages

27   against a public entity or its employees unless the plaintiff first presents a claim to

28   the entity and the entity acts on the claim or is deemed to have rejected it.  *See*

1   Cal. Gov't Code §§ 945.4, 950.2; *Mangold v. California Public Utilities Comm'n,* 67

2   F.3d 1470, 1477 (9th Cir. 1995).  A plaintiff asserting claims subject to the CGCA

3   "must allege facts demonstrating or excusing compliance with the claim

4   presentation requirement."  *California v. Superior Ct. (Bodde)*, 32 Cal. 4th 1234,

5   1243 (2004).  The requirement that a plaintiff must affirmatively allege compliance

6   with the CGCA applies to state law claims brought in federal court.  *Karim-Panahi*

7   *v. Los Angeles Police Dept*, 839 F.2d 621, 627 (9th Cir. 1988).

8         Plaintiffs' claims for violations of Civil Code §§ 52 and 52.1 and "breach of

9   duty, intentional tort, negligence" are subject to the claims presentation

10  requirement.  *See Lozada v. City & Cty. of San Francisco*, 145 Cal. App. 4th 1139,

11  1152 (2006) (claims presentation requirement "has been held applicable to claims

12  arising out of negligence, nuisance, breach of statutory duties, intentional wrongs

13  and contract"); *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 763 (2002) (claims

14  filing requirement applies to damages actions under Civil Code §§ 52 and 52.1).

15         Plaintiffs have not alleged in the complaint that they filed a government

16  claim as required by the CGCA.  This failure mandates dismissal of their state law

17  claims.  *Karim-Panahi*, 839 F.2d at 627.

18         In their opposition, Plaintiffs assert that they sent a claim under the CGCA to

19  Beaumont City Deputy Clerk Nicole Wheelwright on June 21, 2021.  (Dkt. No. 16

20  at 3.)  Plaintiffs have not included this allegation in the complaint, nor have they

21  included the claim and the City's response in the exhibits.  It is therefore

22  recommended that the state law claims be dismissed with leave to amend.  If

23  Plaintiffs have complied with the claims presentation requirement, they should so

24  allege in the amended complaint and attach the claim and disposition.

25        **2.   Unruh Act and Bane Act**

26         Plaintiffs purport to assert a claim under the Unruh Civil Rights Act, Cal. Civ.

27  Code § 51 et seq.  Plaintiffs, however, cite Cal. Civ. Code §§ 52 and 52.1.  Section

28  52.1 is the Bane Act.  Defendants argue that Plaintiffs have not alleged the

1  elements of a claim under either the Unruh Act or the Bane Act.

2          a.  <u>Unruh Act</u>

3        The Unruh Act provides that all persons "are entitled to the full and equal

4  accommodations, advantages, facilities, privileges, or services in all business

5  establishments of every kind whatsoever" and prohibits discrimination based on

6  "sex, race, color, religion, ancestry, national origin, disability, medical condition,

7  genetic information, marital status, sexual orientation, citizenship, primary

8  language, or immigration status."  Cal. Civ. Code § 51(a).

9        The Unruh Act does not apply to cities unless they were functioning as a

10  business establishment when the allegedly wrongful acts occurred.  *See, e.g.,*

11  *Raiser v. City of Murrieta*, No. EDCV 19-183-DSF (KK), 2021 WL 4202516, at *8

12  (C.D. Cal. June 7, 2021) ("Unruh Act . . . does not apply to cities unless they are

13  functioning as a business establishment"), *accepted by* 2021 WL 4196980 (C.D.

14  Cal. Sept. 15, 2021); *Roe v. Rialto Unified Sch. Dist.,* No. EDCV 19-863-JGB (Spx)

15  2020 WL 2790008, at *5 (C.D. Cal. Feb. 26, 2020) ("[b]ecause Plaintiff has not

16  alleged that the City owns or operates the school where the alleged Unruh Act

17  violation took place, she has failed to allege an Unruh Act violation by either the

18  City or its employee")*; Cooley v. City of Los Angeles*, No. 2:18-CV-9053-CAS

19  (PLA), 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) (dismissing Unruh Act

20  claim against city because "there are no allegations in the complaint that support

21  an inference that the area cleanings are a business-like activity" as opposed to "a

22  public service"); *Harrison v. City of Rancho Mirage,* 243 Cal. App. 4th 162, 173

23  (2015) (city was not acting as "business establishment" under Unruh Act when it

24  amended municipal code to increase minimum age of persons responsible for

25  short-term vacation rentals).  Plaintiff have not explained how the City could be

26  deemed to act as a business establishment with respect to the permitting process

27  for Plaintiffs' modifications to their residence.

28        Moreover, to state an Unruh Act claim independent of a claim under the

1    Americans with Disabilities Act, a plaintiff must allege and prove intentional

2    discrimination in public accommodations.  *Greater Los Angeles Agency on*

3    *Deafness, Inc. v. CNN, Inc*., 742 F.3d 414, 425 (9th Cir. 2014) (citing *Munson v.*

4    *Del Taco, Inc.,* 46 Cal. 4th 661 (2009)).  As discussed above, the complaint does

5    not contain facts showing intentional discrimination against Plaintiffs.  *See Earll v.*

6    *eBay, Inc*., 599 Fed. Appx. 695, 696 (9th Cir. 2015) ("Because Earll has not

7    alleged intentional discrimination, Earll's Unruh Act claim fails as a matter of law.").

8           Plaintiffs, therefore, have not alleged an Unruh Act violation.

9                  b.   Bane Act

10          "The California Bane Act creates a cause of action against a person if that

11    person 'interferes by threat, intimidation, or coercion . . . with the exercise or

12    enjoyment by any individual or individuals of rights secured by the Constitution or

13    laws of the United States.'"  *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519 (9th

14    Cir. 2018) (quoting Cal. Civ. Code § 52.1(a)).  "The essence of a Bane Act claim is

15    that the defendant, by the specified improper means (i.e., 'threats, intimidation or

16    coercion'), tried to or did prevent the plaintiff from doing something he or she had

17    the right to do under the law or to force the plaintiff to do something that he or she

18    was not required to do under the law."  *Austin B. v. Escondido Union Sch. Dist*.,

19    149 Cal. App. 4th 860, 883 (2007).  "The plaintiff must show the defendant

20    interfered with or attempted to interfere with the plaintiff's legal right by threatening

21    or committing violent acts."  *Julian v. Mission Cmty. Hosp*., 11 Cal. App. 5th 360,

22    395 (2017) (internal quotation marks and citation omitted).  "Speech is insufficient

23    to establish the requisite threat unless it includes threat of violence."  *Id.*

24          Plaintiffs do not allege that Defendants threatened violence against them.

25    Allegations that Defendants engaged a debt collection agency that sent Plaintiffs

26    "threatening debt collection letters" (Compl. ¶¶ 10, 28, 54) are insufficient to allege

27    a Bane Act violation.  *See City & Cty. of San Francisco v. Ballard*, 136 Cal. App

28    4th 381, 408 (2006) (allegations that city threatened partial demolition of building

1   and large monetary penalties to coerce expensive "unrequired construction" did

2   not "establish any conduct that rises to the level of a threat of violence or coercion"

3   under Section 52.1).  Plaintiffs, therefore, have not alleged a Bane Act violation.

4        It is recommended that Plaintiffs' claims under the Unruh Act and the Bane

5   Act be dismissed with leave to amend for these additional reasons.

6             **3.   Tort Claims**

7        In the fifth cause of action, Plaintiffs assert tort claims for "[b]reach of [d]uty,

8   [i]ntentional [t]ort, [n]egligence" against all Defendants.  (Compl. at 17.)  They

9   allege that the individual defendants maliciously disavowed and repudiated their

10  previous approval of construction, negligently refused to perform their duty to

11  inspect, fabricated code violations, and compiled a false report, causing Plaintiffs

12  monetary damages and severe emotional trauma.  (*Id.* ¶¶ 56-57.)

13       These allegations do not state a plausible tort claim.  In fact, Plaintiffs do not

14  even identify what intentional torts Defendants allegedly committed.  As for

15  negligence, the elements of a cause of action for negligence are "(a) a legal duty

16  to use due care; (b) a breach of such legal duty; [and] (c) the breach as the

17  proximate or legal cause of the resulting injury." *Ladd v. Cty. of San Mateo*, 12

18  Cal.4th 913, 917 (1996) (internal quotation marks, emphases, and citation

19  omitted).  Plaintiffs have not identified the legal duties owed to them and how

20  these duties were breached by each individual Defendant.  The fifth cause of

21  action does not give Defendants "fair notice of what the . . . claim is and the

22  grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks

23  and citation omitted).

24       Defendants further contend that Plaintiffs' claims are barred by various state

25  immunities.  They cite Cal. Gov't Code § 815 (public entity immunity for injuries),

26  § 818.4 (public entity immunity for injuries caused by issuance, denial, suspension

27  or revocation of permit or license), § 818.6 (public entity immunity for injuries

28  caused by failure to inspect or negligent inspection of property), § 820.2 (public

employee immunity for discretionary acts), § 820.4 (public employee immunity for

acts or omissions, exercising due care, in the execution or enforcement of any

law), § 821.2 (public employee immunity for injuries caused by issuance, denial,

suspension or revocation of permit or license), § 821.4 (public employee immunity

for injuries caused by failure to inspect or negligent inspection of property), and

§ 821.6 (public employee immunity for injuries caused by instituting or prosecuting

any judicial or administrative proceeding within scope of employment).

Because Plaintiffs have not stated any plausible tort claim, the court will not

analyze the applicability of these immunities at this time.

It is recommended that Plaintiffs' tort claims be dismissed with leave to

amend for this additional reason.

**D.  Damages**

Defendants contend that Plaintiffs cannot seek punitive damages against

the City and have not alleged sufficient facts to support a claim for punitive

damages from the individual defendants.

Punitive damages are not available against a municipal entity or against

individual defendants in their official capacity.  *City of Newport v. Fact Concerts*,

*Inc.*, 453 U.S. 247, 271 (1981) ("municipality is immune from punitive damages

under 42 U.S.C. § 1983")*; Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).

(defendants in official capacity are immune from punitive damages).  It is

recommended that Plaintiffs' request for punitive damages against the City and

Defendants in their official capacity be dismissed without leave to amend because

the defect is incurable.

Defendants further argue that Plaintiffs' request for punitive damages

against them in their individual capacity is defective because the complaint does

not allege facts showing that their conduct was "motivated by evil motive or intent"

or "involve[d] reckless or callous indifference to the federally protected rights of

others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Courts have found that a Rule

1    12(b)(6) motion for failure to state a claim is not a proper vehicle for attacking a

2    request for punitive damages when the defendant does not argue that punitive

3    damages are precluded as a matter of law but only that the request lacks factual

4    support.  *See, e.g., Townsend v. McDonell*, No. 2:18-cv-10011-R-JC, 2019 WL

5    7882085, at *5 (C.D. Cal. Dec. 12, 2019); *Sturm v. Rasmussen*, No.

6    18-cv-01689-W-BLM, 2019 WL 626167, at *3-4 (S.D. Cal. Feb. 14, 2019);

7    *Andrawes v. Flor Media, Inc.*, No. CV 18-0431-FMO (PLAx), 2018 WL 1942197, at

8    *2 (C.D. Cal. Mar. 16, 2018).  In any event, Plaintiffs have not yet succeeded in

9    stating a Section 1983 claim against Defendants.

10                                              **V.**

11                                    **RECOMMENDATION**

12           For the reasons discussed above, it is recommended that the District Court

13   issue an order: (1) accepting this Report's findings and recommendations; (2)

14   granting Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) as follows:

15   (a) dismissing the claims under 18 U.S.C. §§ 241 and 241 without leave to amend;

16   (b) dismissing all other claims with leave to amend; (c) dismissing Plaintiffs'

17   request for punitive damages against the City and the individual Defendants in

18   their official capacity without leave to amend; and (3) granting Plaintiffs leave to file

19   a First Amended Complaint consistent with this Report within 30 days after the

20   District Court's order.

21

22

23   DATED: June 24, 2022                          _Alicia G. Rosenberg_

24                                           _____

                                                  ALICIA G. ROSENBERG
                                                  United States Magistrate Judge

25

26

27

28

                                                  23