1  EZEKWESILI ILOPUTAIFE
2  NNEKA ILOPUTAIFE
   1421 FAIRCLIFF STREET
3  BEAUMONT, CA 92223
   (951) 324-3634
4  ezetaife@outlook.com
5
   PLAINTIFFS IN PRO PER
6

FILED

2023 JAN -6  PM 12: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY: _____



7              UNITED STATES DISTRICT COURT OF
8              CENTRAL DISTRICT OF CALIFORNIA

9  EZEKWESILI ILOPUTAIFE and NNEKA          Case No.: EDCV 21-1452-JWH (AGR)
10 ILOPUTAIFE,                              Honorable Magistrate Judge Alicia G
11           Plaintiffs,                    Rosenberg Presiding Courtroom 550
12           vs.                            FIRST AMENDED COMPLAINT FOR:
13 CITY OF BEAUMONT, a public entity;       1. CIVIL RIGHTS VIOLATION -
                                               42 U.S.C. Section 1983
14 CHRISTINA TAYLOR; SCOTT R FAZEKAS        2. UNRUH CIVIL RIGHTS ACT -
                                               Sections 52 - 52.1
15 & ASSOCIATES INC., a business entity under   3. BREACH OF DUTY,
16 contract; SCOTT R FAZEKAS individually and      INTENTIONAL TORT,
                                                   NEGLIGENCE.
   DOES 1 through 20, inclusive,
17           Defendants                     JURY TRIAL DEMAND
18
19
20      Plaintiffs, Ezekwesili Iloputaife and Nneka Iloputaife files this First
21
22 Amended Complaint and complains and alleges as follows:
23                        **INTRODUCTION**
24      This is an action for injunctive relief, declaratory relief, and monetary
25
26 damages against the CITY OF BEAUMONT, CHRISTINA TAYLOR, FAZEKAS
27 & ASSOCIATES INC. and SCOTT R FAZEKAS, individually and in their official
28
   FIRST AMENDED COMPLAINT - 1

capacities and DOES 1 through 20 for negligence and violations of Plaintiffs' constitutional rights, results from the CITY OF BEAUMONT officials indiscriminate abuse of authority.

The Defendants' practices of indiscriminate abuse of city ordinances and authority violates these Plaintiffs' rights that are secured by the Fourteenth Amendment of the United States Constitution and entitles Plaintiff to recover damages under Federal Civil Rights Act (42 U.S.C. Section 1983).

The crux of this complaint results from application of the CITY OF BEAUMONT's policies, practices, and customs concerning discriminate code violation citation with unwarranted fines, harassment, and undue claim against the real property known as 1421 FAIRCLIFF STREET, BEAUMONT, CA 92223 (hereinafter described as "SUBJECT PROPERTY") which is also known as APN #421-730-082-9, with a legal description as follows: Lot 33, of Tract No. 31521-2, in the City of Beaumont, County of Riverside, State of California, as shown on a map recorded in Book 398, Pages 1 through 8 inclusive of maps, on file in the office of the office of the county of said county.

At all times herein mentioned, Plaintiffs EZEKWESILI ILOPUTAIFE (hereinafter, "Eze") and NNEKA ILOPUTAIFE (hereinafter, "Nneka") were and are citizens of the United States of America, residents of the CITY OF BEAUMONT, County of Riverside, State of California, with joint interest in the

FIRST AMENDED COMPLAINT - 2

SUBJECT PROPERTY primarily owned by NNEKA which constitutes the basis

of this instant action.

## JURISDICTION

This action is brought pursuant to 42 U.S.C. §1983 and Fourteenth Amendments to

the United States Constitution. Under 28 USC § 1367(a) the Court has

supplemental jurisdiction over the state claims alleged herein.

## PARTIES

1.      Plaintiff Mr. EZEKWESILI I. ILOPUTAIFE (hereinafter, "EZE") at

all material times here was a citizen of the United States of America and a legally

married resident of the State of California who was subjected to oppression and

intimidation in violation of his Fourteenth Amendment Rights.

2.      Plaintiff Mrs. NNEKA I. ILOPUTAIFE (hereinafter, "Nneka") at all

material times here was a citizen of the United States of America and a resident of

the State of California and legal owner of the SUBJECT PROPERTY while legally

married to Eze. Nneka was subjected to oppression and intimidation in violation of

her Fourteenth Amendment Rights.

3.      Defendant FAZEKAS & ASSOCIATES INC. is a California

Corporation based in Irvine, California and at all material times referred to here,

FIRST AMENDED COMPLAINT - 3

was under contract with the CITY OF BEAUMONT (the "CITY" or "BEAUMONT") and Beaumont Community Development Department.

4.     Defendant SCOTT FAZEKAS (hereinafter, "Scott") is and at all material times here, the founder and Managing Director of FAZEKAS & ASSOCIATES INC. under contract with the CITY and Beaumont Community Development Department. He is sued in both his individual and official capacity.

5.     On information and belief, Defendant CHRISTINA TAYLOR (hereinafter, "Ms. Taylor"), is and at all material times referred to here, was Community Development Director for the CITY and Beaumont Community Development Department in charge of City of Beaumont Building and Safety and Code Enforcement. She is sued in both her individual and official capacity.

6.     At all material times mentioned here each of the Defendants Scott, Ms. Taylor and DOES 1-20 was acting under the color of law and under color of statutes, ordinances, regulations, policies, customs and usages of the State of California, the CITY OF BEAUMONT and/or the Beaumont Community Development Department.

7.     Defendant, BEAUMONT (hereinafter, "City") is, and at all material times referred to here is a California municipal corporation existing under the laws of the State of California and the CITY COUNCIL (hereinafter, "COUNCIL") of the City of Beaumont is the legislative body of Defendant City that maintained or

FIRST AMENDED COMPLAINT - 4

permitted official policy or custom or practice causing or permitting the occurrence

of types of wrongs complained of here, which wrongs damaged Eze and Nneka.

Plaintiffs' allegations against City are based on acts and omissions of the

Beaumont Community Development Department of the City and on acts and

omissions of persons who are City employees, and on the City's breach of its duty

to protect Eze and Nneka from the wrongful conduct of such persons and

employees.

8.     DOE Defendants 1 through 20 also maintained or permitted official

policy or custom of causing or permitting the occurrence of the types of wrongs

complained of here, which wrongs damaged Eze and Nneka.

9.     Plaintiffs are ignorant of the true names and capacities of Defendant

sued herein as Does 1-20, inclusive, and therefore sues these defendant s by such

fictitious names. Plaintiffs will amend this Complaint to allege their true names

and capacities when ascertained. Plaintiffs are informed and believes and thereon

allege that each of the fictitiously named defendant s is responsible in some

manner for the occurrences herein alleged.

## FACTUAL BRIEF

10.     This is a civil rights action for damages against the CITY OF

BEAUMONT, SCOTT FAZEKAS & ASSOCIATES INC; CHRISTINA

FIRST AMENDED COMPLAINT - 5

TAYLOR, SCOTT FAZEKAS, on account of their practice of unrestrained and autocratic use of authority in their indiscriminate and unwarranted use of citations against the SUBJECT PROPERTY interests of NNEKA and EZE. The practice includes Ms. TAYLOR acting in concert with her subordinates in their official capacities to arbitrarily repudiate already approved construction and issued unwarranted citations and presumed Plaintiffs guilty with total fine of $76,060.00 without trial.  Ms. TAYLOR denied Plaintiffs rights to procedural and substantive due process while the City employed the services INNOVATIVE COLLECTION SERVICES; a debt collector to terrify NNEKA to the point that her marriage to EZE and general wellbeing of the family was tormented by the persistent barrage of daily intimidating debt collection letters for daily sums of $1,300.00.

11.     Ms. TAYLOR eventually organized a prejudiced administrative hearing panel who did her entire biding by incorporating a falsified STAFF REPORT in their DECISION after an obviously biased virtual hearing. The CITY further charged NNEKA and EZE the sum of $1,945.98 for their right to appeal and insisted on the payment before granting Plaintiffs right to appeal to the CITY COUNCIL. The five-member CITY COUNCIL arbitrarily affirmed the administrative hearing panel's DECISION at the face of glaring irregularities and prejudice. Consequently, actions of every one of the Defendants under these

FIRST AMENDED COMPLAINT - 6

circumstances was despicable, unlawful, malicious, oppressive and with a deliberate indifference to Plaintiffs' rights.

12.    The adopted CITY COUNCIL Resolution No. 2021-42, CITY OF BEAUMONT condones the actions or custom or practice causing or permitting the occurrence of types of wrongs complained of here, which wrongs damaged EZE and NNEKA and will further devastate the Plaintiffs' family without intervention of the Court.

## FACTUAL ANALYSIS
### Evidence Subject to Administrative Records.

13.    Plaintiff Eze applied to the CITY for Building Permit ("Permit). On December 26, 2016, while under contract with the City, Fazekas & Associates approved and recommended Plaintiffs' building plan for Permit. On May 1, 2017, the City approved Plaintiffs' building plan and issued Permit No. BP2017-00691 for a home improvement addition to the SUBJECT PROPERTY which Plaintiff EZE by himself, is doing the construction.

14.    Defendant Scott Fazekas (Scott) is the Chief Executive Officer of Fazekas & Associate. Fazekas & Associate is the city contracted firm that recommended the approval of Plaintiffs' home improvement building Permit Number BP2017-00691. Fazekas & Associates and Beaumont City Building and Safety Department negligently permitted patio that is susceptible to radiation from

FIRST AMENDED COMPLAINT - 7

high-tension wires. Consequently, around May, 2018 Plaintiffs started to add a protective cover over the patio for safety as conspicuously did most of their neighbors. Plaintiff Ezekwesili Iloputaife ("Eze") referred to his neighbors with similar patio covers and told City Building Inspector Michael Almandinger "Mike A" that he blames the city for negligence in the issue. Mike A. then said that he was only concerned about Plaintiffs' permit. Mike A. further promised to inform his superiors about Plaintiffs' concern. The city reacted by writing Eze a letter dated June 7, 2018, attempting to invalidate Eze's Permit No: BP2017-00691.

15.     Eze did all other aspects of the construction at his residence as permitted and strictly in accordance with persistently insistent supervision of city officials Mike A. and another known to Plaintiffs as Mike B.

16.     In accordance with both inspectors' persistence for Eze to abide by permit limitations, Mike A advised Eze on July 19, 2018 to stop work on the unpermitted patio cover and seek permit or a variance for it while construction progressed in unaffected arears of the project. Mike A. also told Eze that he will have to remove the unpermitted patio cover if he fails to meet the requirement before the end of the project.

17.     To comply, Eze immediately sought the attention of the city community development director Ms. Christina Taylor ("Ms. Taylor") for the required variance. However, Ms. Taylor ignored Eze. Instead, the city attempted

FIRST AMENDED COMPLAINT - 8

for the second time to invalidate Plaintiffs' Building Permit No: BP2017-00691 in a letter dated June 4, 2019.

18.     Eze ultimately sought the attention of Beaumont City Mayor Mike Lara around August 13, 2019 for help after it seemed impossible to get Ms. Taylor to pay attention to Eze. It was Mayor Mike Lara that eventually coordinated a meeting on the issue with Ms. Taylor through the city manager.

19.     Meanwhile, on August 15, 2018, Mike A. and Mike B. inspected and officially approved Plaintiffs' main house deck which includes the "2nd story dormer" construction and noted: **"Roof deck OK on approved portion only! OK to load approved sections don't load patio roof! Provide approved plans for patio roof".**

20.     At the meeting with city officials, Eze suggested an onsite evaluation of the need for a variance so they could make an informed conscious decision. The city agreed.

21.     The first comment on the issue by a city official was on July 19, 2018, and the last official comment before Eze involved the mayor was on August 15, 2018. Nevertheless, it still required Eze's persistence to eventually get Ms. Taylor to finally arrange for the project site-visit on September 3, 2019. That is over one year of total negligence of duty on the part of Ms. Taylor.

FIRST AMENDED COMPLAINT - 9

22.   Ms. Taylor was apparently angered that Eze involved the City Mayo

after over a full year of the city doing nothing to address Eze's concern. Therefore,

she maliciously conspired with Scott, Mike A and Mike B to craft extrinsic reason

to differ from the issue of variance as was Plaintiffs' apparent need and only

reason for the negotiated onsite evaluation. Accordingly, Ms. Taylor sent a group

email on September 3, 2019, 3:41pm. While acting under color of state law; Ms.

Taylor writes:

> *"Hi all,*
>
> *The property owner at 1421 Faircliff (known as Eze) has requested*
> *the Building Official come see the construction out on his property.*
> *<u>This is the ongoing issue with what's being built on the site not</u>*
> *<u>reflecting what was approved on the plans.</u>*
> *<u>Scott - I think Mike A. or Shane might have filled you in on what's</u>*
> *<u>going on at this location.</u> If you Mike A. and Mike B. can make a*
> *visit to the site first thing in the morning after training, I would*
> *greatly appreciate it. <u>I think this is what we need to substantiate that</u>*
> *<u>either he needs to build what was approved or the plans need to be</u>*
> *<u>modified to include the engineering and show what's being built"</u>*

23.   Scott is the same city contractor that Eze blames for the negligent

approval of the unsafe patio. Obviously, the only issue of concern at Plaintiffs'

property was officially documented on inspection records by Mike A. and Mike B.

FIRST AMENDED COMPLAINT - 10

24.     On September 4, 2019, the three men visited Plaintiffs' home. Scott refused to discuss the issue with Eze during the visit. The trio left after a walk around in Plaintiffs' home and as they left, Scott told Eze to expect a response from his boss after he submits his report.

25.     Instead, Scott wrote Eze a letter dated September 10, 2019, repudiating aspect of the construction already finished in accordance with approved building plan and as was approved by same Mike A. and Mike B. who accompanied Scott in that visit. Scott thereby, attempt to coverup Fazekas & Associate's negligent blunder by requesting a resubmittal of plan based on fabricated problem.

26.     Not minding that the only issue and viable reason for Eze's negotiated site-visit was for variance evaluation which Eze sought for the unpermitted patio cover as is evident of the inspectors' correction notes. There is no evidence to the contrary. In further confirmation of this fact, Mike A. further approved the "**Roof is installed**" which again, included all the main house roof on May 17, 2019. (Exhibits "28" AR000138).

27.     In fact, Mike A. did extensive inspections on the structural aspect of the construction starting on July 16, 2018. So much that he invited Mike B. to join him on shear wall nailing and roof deck inspections. Both men specifically inspected Plaintiffs' home second story dormer pop-out construction on July 19,

FIRST AMENDED COMPLAINT - 11

2018. Mike A. issued a specific second-story dormer pop-out correction notice to Eze by clearly stating*: "…. **Detail 29- provide hardware per plan. - Partial inspection! Owner/Contractor has been notified to scrutinize details and install hardware & framing as per plan".* That was before the roof deck inspection and approval of August 15, 2018. Detail 29 is the approved engineering plan for the second-story dormer pop-out.

28.     Nine months later; Mike A. subsequently approved the roof over detail 29 construction on June 17, 2019 without further reference to the uncompleted rear patio cover. This is testament to the ongoing compliance process by Eze as was Mike A. and Mike B's instruction of July 19, 2018, and August 15, 2018 to stop work on the patio cover. Therefore, Eze was within right to complete the additional permit request process already in motion or remove the unfinished patio cover before the end of project as agreed.

29.     Eze replied to Scott's letter on September 11, 2019 and requested onsite discussion of the issues raised in Scott's letter. Eze made persistent attempts to resolve the issue while he continued the work at his home. All efforts by Eze to resolve the matter was either rebuffed or ignored.

30.     Instead, the city Wrote Eze a third letter on March 18, 2020, alleging that Plaintiffs' Building Permit BP2017-00691 has Expired. The city followed it up next day March 19, 2020 with a malicious "Curtesy Notice," alleging a ridiculous

FIRST AMENDED COMPLAINT - 12

series of nine unfounded ordinance violations at Plaintiffs' property. Sensing a setup, Eze immediately called the city for clarification. City Code Enforcement Officer Jack Huntsman responded to Plaintiffs' residence. He debunked the "Curtesy Notice" and took pictures for his record before leaving Plaintiffs' residence.

31.     On August 10, 2020, Ms. Kelly McCarthy (Kelly) issued Citation Number C6000186 for alleged Building Code 8.32.060 and Zoning Ordinance 8.32.070 violations while still denying plaintiffs a lawful review of the issues raised in the September 10, 2019 letter. Instead, the Defendants proceeded to issuing daily citations of same two alleged violations starting January 7, 2020. Plaintiffs appealed the Citations by requesting formal timely administrative reviews online which the city ignored.

32.     Without due process, The City assumed plaintiffs guilty and engaged the services of debt collector INNOVATIVE COLLECTION SERVICES "INNOVATIVE" to go after the Plaintiffs. INNOVATIVE unjustly sent debt collection harassment letters to Plaintiff Nneka for daily demand of $1,300.00 as Ms. Taylor continued to deprive Plaintiffs the opportunity to present their objection.

33.     Instead, Kelly continued to issue the daily citations. On February 26, 2021, Kelly issued a Stop Work Notice at the Plaintiffs' residential property.

FIRST AMENDED COMPLAINT - 13

Thereby, depriving Plaintiffs their property rights to Permit No: BP2017-00691

without due process. Eze asked Kelly why the city would not allow due process of

Plaintiffs' request for administrative reviews. Kelly told Eze that the city has

discretionary right not to respond to the Request for Administrative Review that

Plaintiffs had requested pertaining to the citation tickets and Building Permit.

Kelly further told Eze that "you Nigerians come over here and behave like you are

smarter than everyone else". Ms. Taylor who is the chief prosecutor would not

charge the matter as a misdemeanor even after the fourth violation in accordance

with the governing statute:

    **BMC § 1.16.030(A)III (B)III** - Violation-Infraction - Administrative Fine-
Penalty:

        A.    Except as provided in subsection B below and in cases where a
            different punishment is prescribed by any ordinance of the city,
            any person subject to code enforcement by administrative
            citation or convicted of an infraction for violating an ordinance
            of the city, is punishable by: ...…

            III.    A fine not exceeding $500.00 for each additional
            violation of the same ordinance within one year of the first
            violation.
            **The fourth violation and every violation of the same**
                          **ordinance within**
            **one year may thereafter be charged as a misdemeanor.**

        B.    Notwithstanding any other provision of law, a violation of a
            City building and safety code provision is punishable
            by:………………………………

FIRST AMENDED COMPLAINT - 14

III.   A fine not exceeding $1,000.00 for each additional violation of the same provision within one year of the first violation.

**The fourth violation and every violation of the same ordinance within one year may thereafter be charged as a misdemeanor.**

**(Ord. 995, 4-19-11)**

34.   Relying on the promise of **BMC § 1.17.005 - Statement of purpose and intent-(B)** "*...... These procedures are also intended to establish a forum to efficiently, expeditiously, and fairly resolve issues raised by any administrative enforcement action.*" Eze immediately on same day February 26, 2021, escalated his demand to be heard by writing to the city manager and requested for a hearing and complained of being ignored by Ms. Taylor for too long. The city manager's office informed Eze that the request for hearing was forwarded to Ms. Taylor.

35.   On March 2, 2021, following a telephone agreement with Ms. Taylor to remove unpermitted construction, Eze complied by dismantling the unfinished patio-cover and informed Ms. Taylor the next day March 3, 2021 of the completion. The unfinished patio-cover was the only unpermitted construction at the site. The removal was in accordance with the initial condition placed by City Building and Safety Official Mike A.

FIRST AMENDED COMPLAINT - 15

36.     Notwithstanding the effected compliance, the city continued to issue daily citations at Ms. Taylor's directive while continue to deny plaintiffs due process right to a speedy trial/hearing.

37.     On or about March 18, 2021, Ms. Taylor conspired with her associates to fabricate evidence against plaintiffs' Permit in form of "PERMIT INSPECTION HISTORY REPORT BP2017-00691 FOR CITY OF BEAUMONT". The fabricated Permit History Report contains contradicting false and ambiguous information meant to invalidate plaintiffs' Permit BP2017-00691 and to repudiate already approved construction for a coverup of negligence and provide a reason substantial enough to support a request for plaintiffs to resubmit a modified building plan for a new Permit. While the ambiguous Permit Inspection History Report contains mostly wrong inspection history report, it omits crucial inspection records of July 18, 2017, June 17, 2019, and August 5, 2019.

38.     On April 5, 2021, Eze further escalated the request for hearing by writing to the entire City Planning Commission.

39.     On April 12, 2021, Ms. Taylor finally acknowledged plaintiffs' request for hearing. Notwithstanding, the city continued to issue daily citations up till April 20, 2021 at Ms. Taylor's directive despite Ms. Taylors own acknowledgement that "...... ___*Staff felt it was most appropriate to allow due process and decision without further issuing citations*___".

FIRST AMENDED COMPLAINT - 16

40.     On April 14, 2021, Ms. Taylor scheduled a virtual/zoom hearing for 9:00 AM of April 22, 2021 and suggested that Eze email her his evidence for the hearing to forward to the hearing panel and prepare for electronic viewing. On April 19, 2021, Eze emailed Ms. Taylor the evidence as she suggested.

41.     On April 20, 2021, Ms. Taylor emailed Eze the city evidence for the hearing. Eze responded by officially requesting attendance of his accusers as witnesses at the hearing.

42.     Late on April 21, 2021 at about 4:40PM, Ms. Taylor abruptly canceled the hearing scheduled for the next morning without prior notice to Plaintiffs. She independently postponed the hearing date to May 6, 2021 with the explanation that one of the three panelists fell ill, and she was unable to find a replacement on such short notice. Ms. Taylor postponed the hearing independent of the hearing moderator at such short notice despite six standby city appointed panelists.

43.     The same Ms. Taylor picked her choice of hearing panelists and set the guidelines. She made arbitrary decisions and participated in moderating the hearing and decided the outcome of the hearing. All in violation of the operating statute of the City of Beaumont Municipal Code:

**BMC § 1.17.130 - Administrative Hearing Officer.**
   A. ***Qualifications.*** The City Manager or the designated representative
           thereof shall promulgate rules and procedures as may be necessary to

FIRST AMENDED COMPLAINT - 17

contract with qualified persons capable of acting as Administrative
Hearing Officers.

B. ***Independent Authority.*** The employment and compensation of the
Administrative Hearing Officer shall not be directly or indirectly
conditioned upon the amount of the administrative fines assessed by
the Administrative Hearing Officer.

C. ***Disqualification.*** Any person designated to serve as an Administrative
Hearing Officer shall be neutral and shall be disqualified for bias,
prejudice, interest, or for any other reason a judge may be disqualified
in a court of law.

D. ***Powers.*** The Administrative Hearing Officer shall have the power to:

    1. Conduct administrative appeal hearings as provided under the
authority of this Code.

    2. Continue a hearing based on good cause shown by one of the
parties to the hearing or upon his independent determination that
due process has not been adequately afforded to a responsible party.

44.     The Panel held the Administrative Appeal Hearing on May 6, 2021

without the attendance of the four most crucial witnesses, Scott; Mike A; Mike B;

and Kelly despite formal request for their attendance by Eze. Scott was the one that

initiated the issue of this matter in his letter to Eze dated September 10, 2019. Ms.

Taylor eventually acknowledged plaintiffs' right to trial and finally set May 6,

2021 for Hearing. Of which the two years and eight months protracted process was

of Ms. Taylor's own making due to negligence and dereliction of duty.

45.     Ms. Taylor submitted a "Staff Report" attached with uncorroborated

photo evidence. And despite the obvious absence of the crucial witnesses at the

hearing, the panel falsified the hearing attendance list in the DECISION OF THE

FIRST AMENDED COMPLAINT - 18

HEARING PANEL "DECISION". A review of the actual hearing video will show only four individual witness appearances was self-entered (Ms. Christina Taylor and Jack Huntsman for the City of Beaumont & Ms. Nneka Iloputaife with Ezekwesili Iloputaife for Owners). Other than Ms. Christina Taylor announcing the names as falsified, there was no self/personal appearances for those names as reported in the verdict. The video shows only seven screens with eight individuals in attendance. The DECISION falsified actual attendance in an unprecedented display of prejudice. It is especially important to watch the panel head person Elaine Morgan and Ms. Taylor very closely immediately after Ms. Taylor presented her case to notice that they were inappropriately engaged on a private conversation during the hearing to understand the context of Ms. Morgan's statement: "You've gotta keep'em all straight, that's for sure".

46.     Community Enhancement Officer, Jack Huntsman (Jack) was the only one relevant witness in attendance. Eze testified to the duty of Jack as regards the Curtesy Notice plaintiffs received of series of bogus violations. **Eze testified that Jack disparaged the curtesy notice during his clarification visit to Plaintiffs' home.** Jack did not dispute Eze's testimony.

47.     Notwithstanding, Ms. Taylor concealed most crucial evidentiary exhibits submitted by Eze for the hearing. There was no conflicting evidence to Eze's testimony at the hearing.

FIRST AMENDED COMPLAINT - 19

48.     Eze presented undisputed evidence of the inspection performed by Mike A. and Mike B. on August 15, 2018 at the hearing. Yet, the panel's DECISION proved bias by representing Ms. Taylor's false assertion that "…... *An inspection was scheduled for August 15, 2018 but was not conducted due to no one answering at the residence*".

49.     Eze testified that Ms. Taylor's own photograph evidence proved there was no evidence of zoning violation BMC 8.32.070 at Plaintiffs' residence. Ms. Taylor orchestrated the biased DECISION against the Plaintiffs regardless of all the irrefutable evidence by Eze that contradicts the City Staff Report.

50.     The city deputy manager, Ms. Kristin Day, and Ms. Taylor, both denied Eze administrative hearing and emphasized to plaintiffs the option of removal of unpermitted construction as compliance. Eze testified to having complied, by removing the unpermitted patio-cover on March 2, 2021, after it became obvious that Ms. Taylor will not consider EZE's request for a variance.

51.     In further attempt to resolve the matter, Eze challenged Defendants with evidence of his compliance with Approved Plan as Permitted; the Defendants did not dispute EZE's compliance as represented in evidence.

52.     Plaintiff Eze dwells at the project site for Permit No: BP2017-00691 and does all the work by himself as his only occupation since inception. This is at the knowledge and approval of the defendants. Eze did not stop work at his

FIRST AMENDED COMPLAINT - 20

residential jobsite for 180 consecutive days as is the only condition for his Building

Permit to expire. Eze testified to this fact at the hearing. There is no evidence

presented at the hearing to show that Eze stopped work at plaintiffs permitted

residential jobsite for 180 consecutive days to prove that Permit No: BP2017-

00691 expired. The letters only alleged that Permit No: BP2017-00691 expired

without proof. Nevertheless, the Defendants deprived Plaintiffs duly acquired

property right to Permit No: BP2017-00691 without due process of law.

53.     The fabricated PERMIT INSPECTION HISTORY REPORT

(BP2017-00691) FOR CITY OF BEAUMONT submitted by Ms. Taylor as

evidence alleges: (1.) Permit "Expiration Date" of 02/11/2019. Thereby

undermining the originally alleged permit expiration notice of June 7, 2018. The

conflicting Permit expiration record dates cannot be evidence of anything but fraud

on plaintiffs.  (2.) The falsification of the Permit Inspection History Report is

glaring by the conflicting statements on the **08/15/2018** inspection schedule entry

under "COMMENTS" which claims: ***"No answer. Rang bell three times. Mike A***

***twice. Mike B once. Left card and let know to call for another inspection."*** That

is in total conflict with the next entry line, under **"<u>Complete</u>"** column which

confirms that the inspection was conducted **"Approved" "Yes"** on the same day.

Eze also testified to that inspection with undisputed evidence.  (3.) The 08/13/2018

"Roof Deck" inspection entry under "COMMENTS" on same Report states: ***"No***

FIRST AMENDED COMPLAINT - 21

*answer. **Rang bell three times. Mike A twice. Mike B once. Left card and let know to call for another inspection***".

54.     Notwithstanding the irrefutable evidence, the DECISION wrongly states on "**II. INTRODUCTION AND BACKGROUND**" that: "***Subsequent inspections were conducted on July 19, 2018, August 7, 2018 and August13, 2018 all requiring reinspection. An inspection was scheduled for August 15, 2018 but was not conducted due to no one answering at the residence***".

55.     In utmost display of prejudice, and despite the absentee crucial city witnesses, the DECISION incorporated verbatim the uncorroborated "Staff Report" into the DECISION OF THE HEARING PANEL. Including the successfully debunked "Courtesy Notice".

56.     Inconsistent with due process; the DECISION falsified the hearing attendance list to include names of absentee crucial witnesses as though they were present at the hearing.

57.     Furthermore, the DECISION, ¶ **V. "BASIS FOR DECISION"** that reads: "***The seven-year period of the City working to remedy the violations with the owner(s) has given sufficient time to the property owners to bring the property to code.***" Is unfounded.

58.     Plaintiffs sent complaint/claim letter twice to the city about the undue infliction of suffering upon the Plaintiffs, first on February 26, 2021, second on

FIRST AMENDED COMPLAINT - 22

June 9, 2021 on which Plaintiffs informed the City that Plaintiffs are considering every possible legal remedy available to Plaintiffs. Plaintiffs were ignored both times. Plaintiffs did also send official Legal Notice for preservation of records addressed to the city clerk and city manager on March 5, 2021.

59.     Plaintiffs filed a timely Notice of Appeal on June 7, 2021. The defendants charged the plaintiffs $1,945.98 on July 1, 2021, for "Application to Appeal to City Council." The defendants insisted on payment from plaintiffs without lawful authority before processing plaintiffs' appeal to Beaumont City Council, even though the operating statute "BMC Section 8.32.495-APPEAL TO THE CITY COUNCIL" does not require a fee payment for "Application to Appeal to City Council." Plaintiffs made cash payment of $1,945.98 to defendant city on July 2, 2021 before the clerk's office scheduled the appeal.

60.     Appeal hearing date was set for the next regular City Council meeting of July 20, 2021, at 6:00 p.m., in Council Chambers located at Beaumont Civic Center, 550 E Sixth Street, Beaumont, Ca 92223.

61.     On July 16, 2021, Plaintiffs filed their Pleading for the Appeal: Re: APPEAL TO BEAUMONT CITY COUNCIL from the "DECISION OF THE HEARINGPANEL AND ORDER TO ABATE PUBLIC NUISANCE" PER BMC Section 8.32.495-APPEAL TO THE CITY COUNCIL. Plaintiffs' grounds for the appeal were as follows:

FIRST AMENDED COMPLAINT - 23

- The validity of the decision is in question based on the false premise on which the decision was reached.
- Prejudice.

62.     On July 19, 2021, Pedro Rico, Chief Building Official for the City of Beaumont filed "Response to property owners' pleading". Ms. Taylor also filed "Christina Taylor, Community Development Director Response to property owners' pleading".

63.     The Beaumont City Council held the appeal hearing as scheduled on July 20, 2021, at 6:00 p.m., in Council Chambers located at Beaumont Civic Center, 550 E Sixth Street, Beaumont, Ca 92223.

64.     Mayor Mike Lara is supposed to be an important witness in this matter. Instead, he presided over the appeal hearing regardless his disqualification to serve in the panel due to bias as a significant adverse witness in the case against Plaintiffs in accordance with governing statute, BMC § 1.17.130 (C) "Disqualification".

65.     Scott Fazekas did not appear at the appeal trial as he was also absent at initial trail. Scott is the agent that conspired to fabricate what Defendants needed to substantiate denial of plaintiffs' request for variance. To achieve that plan, Scott repudiated already approved construction to "**substantiate that either 'Eze' needs**

FIRST AMENDED COMPLAINT - 24

*to build what was approved or the plans need to be modified to include the*
*engineering and show what's being built*".

66.    Scott is the original accuser of the plaintiffs and the most essential witness in this case. Yet he and Kelly McCarthy did not attend either of the trial. Nevertheless, the City Council verdict "RESOLUTION NO. 2021-42," wrongly listed Scott Fazekas as present for the city at the trial in an unmistakable show of bias.

67.    Eze testified with proof that the construction complies with the Permitted Approved Plan after he removed the patio cover. Eze even offered to overlook the August 15, 2018 approved construction by City Inspectors and tear down the whole construction if in adherence to **BMC § 8.32.370**, a visit to the site by the hearing panel show unpermitted work. The City Council did not take EZE up on that offer.

68.    Eze testified to the fact that the City Chief Building Official, Mr. Pedro Rico said to him that he deserves what he was getting because he asked for variance and blames the city for negligence. Mr. Pedro Rico was present at the hearing and heard Eze's testimony to that fact. Mr. Pedro Rico did not dispute Eze's testimony.

69.    Mike A. was present at the City Council appeal trial and did testify in the affirmative to the August 15, 2018 inspection and approval, Notwithstanding

FIRST AMENDED COMPLAINT - 25

Mike A's testimony, the City Council verdict "RESOLUTION NO. 2021-42 still misrepresents that "*…… An inspection was scheduled for August 15, 2018 but was not conducted due to no one answering at the residence*".

70.     Mike A. lied on witness stand by saying that "*The last inspection I see is 8/15/2018*". This is regardless of the evidence of subsequent inspections he conducted on June 17, 2019, and August 5, 2019. These were inspections Mike A. conducted without any additional show of concern about the patio-cover, a year after his last official comment on the issue.

71.     The Beaumont City Council Panel asked leading questions of hostile witnesses, and did not offer the plaintiffs lawful opportunity to cross examine adverse witnesses.

72.     In this matter, the Defendants issued a total of sixty unfounded citations for alleged Building Code violation 8.32.060 and Zoning Ordinance Violation 8.32.070 within one year under mere presumption of guilt on the first fifty-nine allegations.

73.     Plaintiffs never admitted guilt and were never convicted of any violation. Due process of law was maliciously denied to the Plaintiffs who made persistent effort for a hearing while the Defendants continued presuming Plaintiffs guilt and issuing daily citations for the very same alleged violations and further engaged the services of INNOVATIVE COLLECTION SERVICES to intimidate,

FIRST AMENDED COMPLAINT - 26

harass, bully, and coerce the Plaintiffs to submission by demanding daily fine of the sum of $1,300.00.

74.     The evidence will show irrefutably prove that the Defendants had knowledge of the situation at Plaintiffs' residence sometime around May 2018. Mike A. and Mike B. last referenced the issue on August 15, 2018 and did nothing further to address the issue despite persistent pressure from Eze; until after Eze Involved Mayor Mike Lara and the eventual September 10, 2019 letter by Scott. That is a period of thirteen months of dereliction of duty and pretended ignorance of Plaintiffs' concern.

75.     Starting September 11, 2019, Plaintiffs were denied due process Administrative Review and opportunity to present their objections until after April 4, 2021 when eventually, "***Staff felt it was most appropriate to allow due process and decision without further issuing citations***". That is 571 days of presumptive guilt of the Plaintiffs pending trial. In violation of Cal. Pen. Code § 1096.

76.     Meanwhile, the Defendants continued to presume Plaintiffs guilty by issuing daily violation citations and engaged services of debt collectors for daily $1,300 which includes collection fee of $300 against the Plaintiffs as they continue to deny Plaintiffs opportunity to present their objections. All in attempt to pressure Plaintiffs for a resubmittal of building plan which provides Defendants an opportunity to coverup their negligence; notwithstanding irrefutable evidence

FIRST AMENDED COMPLAINT - 27

showing that Eze already complied with the Approve Plan after variance was denied.

77.    The evidence on record gives credence to Plaintiffs' allegations of malfeasance by the Defendants. RESOLUTION NO. 2021-42 is bias in upholding the "DECITION" of the Hearing Panel which is equally bias. The verdict relies on already refuted evidence of obvious misrepresentations and fraud. The abject failure to project fair and equitable standard set by the United States Constitution and all other prevailing statutes invalidates RESOLUTION NO. 2021-42.

78.    Notwithstanding all the above, Resolution No. 2021-42 orders Plaintiffs to: 1) Unjustified "Stop Work Order"; 2) Coverup "Abatement Order" to submit new plan to the City for new approval, and complete construction and obtain final City inspections and approval of the work; 3) pay the outrageous sum of $27,823.65 for city attorney fees and costs, and an additional $76,060 for failure to abate 'none existent' nuisances, for total fines of $103,883.65 to be a lien on Plaintiffs' property as penalty. The fine is without proper jurisdiction.

79.    Therefore, Plaintiffs hereby allege administrative malpractice and corruption on the part of Defendants to have denied Plaintiffs of their rights to Administrative Review while continued to issue Citations against the SUBJECT PROPERTY for the same alleged violations they are being denied Due Process, and further assess Fines and Debt Collection Fees, Attorney Fees, and CITY Staff

FIRST AMENDED COMPLAINT - 28

Costs and demand payment for the period for which Defendants denied Plaintiffs of their secured rights and collected $1,945.85 from Plaintiffs for their right to be heard on appeal.

80.    Plaintiffs also contends and thereupon allege that Defendants FAZEKAS and DOES 1 – 10 as experienced building professionals with ample opportunity for a proper plan-check; did negligently and or maliciously approved the building-plan for the addition to the SUBJECT PROPERTY despite the discrepancy between the approved architectural rendering and the engineered Detail 29; and are negligent of required set-back in proximity to the Southern California high-tension wires against possible radioactivity danger.

81.    Plaintiffs are informed and believe and thereupon allege that city officials TAYLOR, SCOTT, MIKE A, and MIKE B. conspired to repudiate the CITY already approved work while denying Plaintiffs procedural due process and equal protection in refusing to grant Plaintiffs' request for a variance to protect their family against possible danger while ignoring same conditions with plaintiffs' neighbors. The Defendants has further executed a conspiracy aimed at depriving Plaintiffs' right to their most precious property as is secured by the Fourteenth Amendment of the Constitution of the United State of America.

82.    Plaintiffs are informed and believe and thereupon allege that TAYLOR, SCOTT, MIKE A. and other "CITY STAFF" has conspired, and

FIRST AMENDED COMPLAINT - 29

continues to conspire to hide and distort the true facts concerning the issues of this complaint. This conspiracy is furthered by Defendant TAYLOR in preparing false and misleading reports, as well as providing false and misleading statements concerning the true nature of city staff interactions with Plaintiffs.

83.     Defendants CITY, TAYLOR, FAZEKAS & ASSOCIATES INC. and SCOTT are collectively and personally responsible for the promulgation and continuation of illegal policies, practices, and customs pursuant to which Plaintiffs are being subjected.

84.     As a result of being subjected to the malfeasance and cruelty complained of here, Plaintiffs suffered physical, mental, and emotional distress, the loss of enjoyment of life, and a violation of due process of law and state and federal statutory and constitutional rights all in an amount to be determined according to proof at trial. In addition, Plaintiffs are entitled to recover a minimum of $4,000 as specified in California Civil Code § 52 and § 52.1(b).

## FIRST CAUSE OF ACTION
### DECLARATORY RELIEF
(As Against All Defendants)

85.     Plaintiffs re-allege and hereby incorporate here the preceding paragraphs of this complaint, to the extent, as if fully set forth.

FIRST AMENDED COMPLAINT - 30

86.     Consequently, an actual conflict has arisen and now exists between

Plaintiffs and Defendants and each one of them concerning the following matters

relative to their respective rights and duties in that:

a.      Plaintiffs contends that the SUBJECT PROPERTY building plan was

approved and duly permitted after a meticulous professional plan check by the

CITY and the construction of the area in conflict was done according to and by the

insistent directive and approval of CITY building inspectors which therefore

makes the CITY liable for any consequential damages.

b.      The BASES for DECISION by the PANEL is unfounded and Council

Resolution No. 2021-42 affirming such DECISION is biased and infringes on

Plaintiffs' rights to property enjoyment and is based on apparent false premises

framed by Defendants; meant to coverup Defendants' arbitrary and abusive

conduct that shocks the conscience.

c.      The SUBJECT PROPERTY is not and has never been a public nuisance.

Instead, it has been a highly impressive property, as is obvious from all

photographs the Defendants has ever produced all through the process. This has

been a ploy to get back at Plaintiffs for daring and always successful in fighting for

their constitutionally protected rights against biased Defendants. These attached

photographs depict the present appearance of the SUBJECT PROPERTY since the

FIRST AMENDED COMPLAINT - 31

CITY issued a LEGAL STOP WORK ORDER on February 26, 2021. **(Exhibit "T").**

**d.**     These Defendants' lack adherence to the provisions of the Fourteenth Amendment of the Constitution of United States of America and are engaged in oppression and intimidation as is prohibited law while in reckless abuse of BEAUMONT Municipal Code sections 8.32.060 and 8.32.070 aimed at depriving Defendants right to property.

## SECOND CAUSE OF ACTION
(Violation of Fourteenth Amendment to the U. S. Constitution on behalf of Plaintiffs against all Defendants)

87.     Plaintiffs re-allege and hereby incorporate here the preceding paragraphs of this complaint, to the extent, as if fully set forth.

88.     Defendants' policies, practices, and customs regarding the pattern of malfeasance complained of here violates Plaintiffs' rights, under the Fourteenth Amendment rights to procedural due process and equal protection of the laws; and directly and proximately damaged Plaintiffs as alleged here, all in an amount to be determined according to proof at trial. Moreover, Plaintiffs are entitled to recover damages for these constitutional violations pursuant to 42 U.S.C. Section 1983 all in an amount to be determined according to proof at trial.

## THIRD CAUSE OF ACTION

FIRST AMENDED COMPLAINT - 32

(California State Unruh Civil Rights Act, Civil Code § 52 and § 52.1, Case on behalf of Plaintiffs against all Defendants)

89.    Plaintiffs re-allege and hereby incorporate here the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

90.    Defendants' policies, practices, and customs regarding the arbitrary abusive conduct that interferes with the Plaintiffs' rights to enjoy life, acquire, possess, and protect property, and pursuing and obtaining happiness as secured by Article I, Section 1 of the California Constitution and directly and proximately damaged Plaintiff, as alleged here in an amount to be determined according to proof at trial. Moreover, Plaintiffs are entitled to recover a minimum of $4,000 for each violation pursuant to California Civil Code § 52.1 and § 52, in addition to other damages.

**FOURTH CAUSE OF ACTION**
(Breach of Duty, Intentional Tort, Negligence on behalf of Plaintiffs against all Defendants)

91.    Plaintiffs re-allege and hereby incorporate here the preceding paragraphs of this complaint, to the extent relevant, as if fully set forth.

92.    Defendant TAYLOR was acting under the color of law, as official of the CITY and in her personal professional capacity in the arbitrary and intentional repudiation of already approved construction which the CITY Permitted, directed

FIRST AMENDED COMPLAINT - 33

and approved. Defendants acted with malice in disavowing their actions a year and much advanced construction stages later and are negligent in refusing to continue to perform their duty to inspect construction. Instead, the Defendants resorted to fabricate violations and assumed Plaintiffs guilty and fined Plaintiffs **$76,060.00** and send debt collectors after the Plaintiffs. Defendants further compiled a false report and assessed staff costs of **$17,116.05** and attorneys' fees of **$10,707.60** for a total sum of **$103,883.65**, after having required a payment of **$1,945.98** from Plaintiffs for their rights to appeal to the CITY COUNCIL.

93.    As a legal result of the violations of statutes and civil rights, Plaintiffs suffered and continues to suffer severe emotional trauma due to the collective autocratic exploits of the Defendants, Plaintiffs has suffered and continue to suffer severe emotional trauma.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

**1.**    For declaratory and injunctive relief declaring illegal Defendants' policies, practices, and customs of reckless abuse of Beaumont Municipal Ordinances such as the abusive enforcement of Code sections 8.32.060 and 8.32.070 used to oppress, intimidate, and harass by the employment of debt collection agency without procedural due process; and enjoin preliminarily and permanently,

FIRST AMENDED COMPLAINT - 34

BEAUMONT Resolution No. 2021-42 which is void based on apparent false premises framed by Defendants and meant to oppress Plaintiffs and to coverup Defendants' arbitrary and abusive conduct that shocks the conscience;

2.      For compensatory, general, and special damages for Plaintiffs, as against all Defendants in an amount to be determined according to proof at trial;

3.      In addition to compensatory and statutory damages as allowed by law, at least $4,000 for each plaintiff pursuant to California Civil Code § 52.1 and § 52 for each violation thereof;

4.      Attorneys' fees and costs under 42. U.S.C. § 1988, California Civil Code § 52(b)(3), California Civil Code §52.1(h), California Code of Civil Procedure § 1021.5 and; and

5.      The cost of this suit and such other relief as the court finds just and proper.

///

///

///

//

Dated this 6th of January 2023.


_____                          _____
Ezekwesili Iloputaife                                 Nneka Iloputaife
Plaintiff.                                                    Plaintiff.

FIRST AMENDED COMPLAINT - 35

1
2
## VERIFICATION
3
### CASE NO. EDCV 21-1452-JWH (AGR)
4
5
I, Ezekwesili Iloputaife, declare and say:
6
7
I am the Plaintiff in this action. I have personal knowledge of the facts
8
thereof set forth. If called as a witness, I could and would testify competently
9
thereto. I am familiar with the records and files described in and the subject of this
10
Complaint, and know the facts set forth in the Complaint to be true and correct.
11
I declare under penalty of perjury that the foregoing is true and correct.
12
13
Executed on August 16, 2021, at Beaumont, California.
14
15
Dated this 6th of January 2023.
16
17
Ezekwesili Iloputaife,
in pro per and for Nneka Iloputaife
18
19
20
## DEMAND FOR JURY TRIAL
21
22
Plaintiffs hereby demand a trial by jury.
23
24
Dated this 6th of January 2023.
25
26
Ezekwesili Iloputaife,
in pro per and for Nneka Iloputaife
27
28

FIRST AMENDED COMPLAINT - 36

**PROOF OF SERVICE**
[CCP§§ 1013(a)3]
STATE OF CALIFORNIA COUNTY OF RIVERSIDE

I, the undersigned, am a resident of, Riverside County, State of California. I am over the age of eighteen years, and not a party to the within action. My residence address is 920 Cypress Drive, San Jacinto, California 92583.

On January 6, 2023, I served or caused to be served the foregoing documents described as FIRST AMENDED COMPLAINT FOR Case No.: EDCV 21-1452-JWH on all interested parties in this action via electronic mail to their electronic service addresses as indicated below:

John O. Pinkney, Esq. SBN 162586          Email: Pinkney@sbemp.com
Brent S. Clemmer, Esq. SBN 179722       Email: Clemmer@sbemp.com
Bruce T. Bauer, Esq., SBN 149781          Email: Bauer@sbemp.com

SLOVAK BARON EMPEY MURPHY & PINKNEY LLP
1800 East Tahquitz Canyon Way
Palm Springs, California 92262
Telephone (760) 322-2275
Facsimile (760) 322-2107

Attorneys for Respondents CITY OF BEAUMONT, BEAUMONT CITY COUNCIL, CHRISTINA TAYLOR, SCOTT R. FAZEKAS, MICHAEL ALMANDINGER and KELLY MCCARTHY

I certify under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on January 6, 2023, at Beaumont, California.

Anayochukwu H. Iloputaife
951-478-2522