UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EZEKWESILI ILOPUTAIFE and NNEKA ILOPUTAIFE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BEAUMONT et al.,<br><br>Defendants. | NO. EDCV 21-1452-JWH (AGR)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

The court submits this Report and Recommendation to the Honorable John W. Holcomb, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the court recommends the disposition set forth below in the recommendation.

## I.
## SUMMARY OF PROCEEDINGS

On August 26, 2021, Plaintiffs Ezekwesili Iloputaife ("E. Iloputaife") and Nneka Iloputaife ("N. Iloputaife"), proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against the City of Beaumont ("City" or "Beaumont"), Christina Taylor, Scott A. Fazekas, Michael Almandinger, Kelly McCarthy, and Does 1 through 20. (Dkt. Nos. 1, 3.)

Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 7.) On December 9, 2022, the District Court accepted the recommendations in the Report and Recommendation issued on June 24, 2022, and dismissed the complaint with leave to amend.[1] (Dkt. Nos. 21, 23.)

On January 6, 2023, Plaintiffs filed a First Amended Complaint ("FAC") against the City, Taylor, Fazekas, Scott Fazekas & Associates, Inc. ("Fazekas & Assoc."), and Does 1 through 20. (Dkt. No. 25.) On January 20, 2023, the City, Taylor, and Fazekas moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[2] (Dkt. No. 26.) On February 23, 2023, Plaintiffs filed an opposition. (Dkt. No. 32.) On March 9, 2023, Defendants filed a reply. (Dkt. No. 33.) The motion was taken under submission.

On June 27, 2023, Plaintiff N. Iloputaife filed a notice of dismissal of "her portion of the lawsuit in its entirety." (Dkt. No. 34.)

## II.
## ALLEGATIONS IN FAC

Plaintiffs are a married couple living in Beaumont. (FAC ¶¶ 1-2.) Plaintiff N. Iloputaife "primarily own[s]" the house where they live (sometimes "Property"). (*Id.* at 2-3.) Defendant Fazekas & Assoc. is a California corporation "under

---

[1] A few claims were dismissed without leave to amend.

[2] Fazekas & Assoc. has not been served with process and has not appeared.

2

contract" with the City and the Beaumont Community Development Department. (*Id.* ¶ 3.) Defendant Fazekas is the founder and managing director of Fazekas & Assoc. (*Id.* ¶ 4.) Defendant Taylor is the Community Development Director for the City and is in charge of Beaumont Building and Safety Code enforcement. (*Id.* ¶ 5.)

On December 26, 2016, Fazekas & Assoc. recommended approval of building plans for an addition to the Property and, on May 1, 2017, the City issued Permit No. BP2017-00691 ("Permit"). (*Id.* ¶ 13.) Plaintiff E. Iloputaife did the construction himself. (*Id.*) Fazekas & Assoc. and the City negligently approved a patio that was susceptible to radiation due to the proximity of high tension electric wires. (*Id.* ¶ 14.) In May 2018, Plaintiffs started to add a protective cover over the patio for safety, as did most of their neighbors. (*Id.*) After Plaintiff E. Iloputaife told building inspector Almandinger that he blamed the City for its negligence, the City sent Plaintiffs a letter attempting to invalidate the Permit. (*Id.*)

Because the patio cover was not within the scope of the Permit, Almandinger advised Plaintiff E. Iloputaife to stop work on it and seek a variance while working on other areas of the project. (*Id.* ¶ 16.) Plaintiff E. Iloputaife tried to contact Taylor to obtain the required variance, but she ignored him and the City sent him another letter attempting to invalidate the Permit. (*Id.* ¶ 17.) Around August 13, 2019, Plaintiff E. Iloputaife sought help from Beaumont Mayor Mike Lara, who arranged a meeting with Taylor. (*Id.* ¶ 18.)

In the meantime, on August 15, 2018, Almandinger and building inspector "Mike B." inspected and approved Plaintiff's "main house deck," which included a second story dormer construction. (*Id.* ¶ 19.)

At the meeting with City officials, Plaintiff E. Iloputaife suggested an on-site evaluation of the need for a variance for the patio cover, and the City agreed. (*Id.* ¶ 20.) On September 4, 2019, Fazekas, Almandinger, and Mike B. visited the Property but refused to discuss any issues during the visit. (*Id.* ¶ 24.) On

September 10, 2019, Fazekas wrote Plaintiffs a letter repudiating a portion of the dormer construction that was already finished and had been approved by Almandinger and Mike B.  (*Id.* ¶ 25.)  Plaintiffs contend that Fazekas attempted to cover up his company's negligence in recommending approval of the unsafe patio by requesting resubmitted plans based on a fabricated problem.  (*Id.*)

According to Plaintiffs, the only reason for the on-site visit was to evaluate the need for a variance for the unpermitted patio cover, and the second story dormer construction had already been inspected and approved by Almandinger and Mike B.  (*Id.* ¶¶ 26-28.)  Consequently, Plaintiff E. Iloputaife continued to work on the construction while he attempted to resolve the issues raised in Fazekas' letter.  (*Id.* ¶ 29.)

On March 18, 2020, the City sent Plaintiffs a letter stating that the Permit had expired.  (*Id.* ¶ 30.)  On March 19, 2020, the City sent a "courtesy notice" of "nine unfounded ordinance violations" at the Property.  (*Id.*)  When Plaintiffs sought clarification, code enforcement officer Jack Huntsman inspected the Property and found no violations.  (*Id.* ¶¶ 30, 46.)

On August 10, 2020, McCarthy issued a citation for violations of Beaumont Municipal Code ("BMC") 8.32.060 and BMC 8.32.070, and proceeded to issue daily citations for the same two violations.[3]  (*Id.* ¶ 31.)  Plaintiffs' requests for administrative review of the citations were ignored.  (*Id.* ¶¶ 31-32.)  The City engaged a debt collection agency which sent harassing letters to Plaintiff N. Iloputaife, demanding $1,300 per day.  (*Id.* ¶ 32.)  On February 26, 2021, McCarthy issued a stop work notice at the Property.  (*Id.* ¶ 33.)  McCarthy told Plaintiff E. Iloputaife that the City had discretion not to respond to his requests for

---

[3]   BMC § 8.32.060 provides that premises in violation of certain building codes or subject to certain enumerated conditions are a public nuisance. BMC § 8.32.070 provides that premises maintained contrary to the City's zoning ordinance are a public nuisance.  (Dkt. No. 27 at 19.)

administrative review, and said: "You Nigerians come over here and behave like you are smarter than everyone else." (*Id.*)

After receiving the stop work notice, Plaintiff E. Iloputaife complained to the city manager that Taylor was ignoring him and demanded an administrative hearing. (*Id.* ¶ 34.) On March 2, 2021, following a telephone agreement with Taylor to remove unpermitted construction, Plaintiff E. Iloputaife dismantled the unfinished patio cover, which according to Plaintiffs was the only unpermitted construction, and informed Taylor of the removal the next day. (*Id.* ¶ 35.) The City nevertheless continued to issue daily citations while denying Plaintiffs a hearing. (*Id.* ¶ 37.)

On March 18, 2021, Taylor allegedly fabricated evidence in the form of a permit inspection history report that contained false and ambiguous information meant to invalidate the Permit, repudiate already approved construction, and provide a reason to require Plaintiffs to submit a modified building plan for a new permit. (*Id.* ¶ 37.) The report omitted "crucial inspection records of July 18, 2017, June 17, 2019, and August 5, 2019," and stated that the Permit expired on February 11, 2019. (*Id.* ¶¶ 37, 53.)

Taylor eventually acknowledged Plaintiffs' request for an administrative hearing, but the City continued to issue daily citations until April 20, 2021. (*Id.* ¶ 39.) Taylor scheduled a virtual hearing for April 22, 2021, and Plaintiffs and Taylor emailed each other their evidence. (*Id.* ¶¶ 40-41.) Late on April 21, 2021, Taylor postponed the meeting to May 6, 2021, with the explanation that one of the panelists was ill and she could not find a replacement. (*Id.* ¶ 42.)

The hearing was held on May 6, 2021. Fazekas, Almandinger, Mike B. and McCarthy were absent, although Plaintiff had formally requested their presence as witnesses. (*Id.* ¶¶ 41, 44.) Taylor submitted a "staff report" with attached "uncorroborated photo evidence." (*Id.* ¶ 45.) Plaintiffs presented their case, including undisputed evidence of an inspection performed by Almandinger and

5

Mike B. on the dormer construction on August 15, 2018. (*Id.* ¶¶ 45-48, 51-53.) The administrative panel nevertheless accepted Taylor's false assertion that an inspection was scheduled for August 15, 2018, but nobody answered the door. (*Id.* ¶ 48; *see also Id.* ¶¶ 53-54.) The administrative panel's decision against Plaintiffs incorporated verbatim the uncorroborated staff report and the "debunked" courtesy notice, and falsified the attendance list for the hearing. (*Id.* ¶¶ 45, 54, 55-57.)

Plaintiffs filed a notice of appeal and were required to pay $1,945.98 before it was processed. (*Id.* ¶ 59.) They submitted written testimony and received the City's responses. (*Id.* ¶¶ 61-62.) The Beaumont City Council held an appeal hearing on July 20, 2021. (*Id.* ¶ 63.) Plaintiff E. Iloputaife testified and presented evidence. (*Id.* ¶¶ 67-68.) Fazekas and McCarthy did not attend the hearing, although the City Council's decision wrongly listed Fazekas as present. (*Id.* ¶ 66.) Almandinger was present and testified "in the affirmative to the August 15, 2018 inspection and approval." (*Id.* ¶¶ 69-70.) The City Council panel "asked leading questions of hostile witnesses" and did not allow Plaintiffs to cross-examine them. (*Id.* at ¶ 71.)

On August 3, 2021, the City Council issued Resolution No. 2021-42 affirming the administrative decision. (*Id.* ¶ 77; *see* Dkt. No. 3 at 110-19.)[4] It found that: substantial evidence supported a finding that BMC §§ 8.32.060 and 8.32.070 were violated; the scope of the construction exceeded the work permissible under the plans; work was done after the Permit expired; and the second story rear terrace and second story dormer were not in compliance with what the City had approved and constituted a public nuisance under BMC § 8.32.420. (Dkt. No. 3 at 116-17.) The City Council found that Plaintiffs were liable for fines of $76,060 and attorneys fees/costs in the amount of $27, 823.65,

---

[4] As discussed below, the court has taken judicial notice of Resolution No. 2021-42.

but reduced the total amount to $27,823.65 if paid within 90 days.  (*Id.* at 117; FAC ¶ 78.)  The Resolution directed Plaintiffs to stop all construction work and provided that the City would seek an order for abatement of the nuisance or appointment of a receiver unless (1) within 30 days, Plaintiffs provided a report from a licensed structural engineer certifying whether the property was safe for habitation; (2) within 90 days, Plaintiffs had a licensed structural engineer prepare, submit and obtain approval of plans to correct the violations and obtained a permit to complete the work; and (3) within 270 days, Plaintiffs completed construction and obtained final inspections and approval.  (Dkt. No. 3 at 117-18.)  Plaintiffs contend that Resolution No. 2021-42 relied on clearly refuted evidence and was obviously biased.  (FAC ¶ 77.)

      Plaintiffs complain that within one year Defendants issued a total of 60 unfounded citations for alleged violations of BMC 8.32.060 and Zoning Ordinance 8.32.070.  (*Id.* ¶ 72.)  Defendants continued to issue daily citations for the same violations while denying Plaintiffs a hearing, and engaged a collection agency to coerce Plaintiffs into submission by demanding a daily fine of $1,300.  (*Id.* ¶¶ 73-76, 79.)  Defendants did so to force Plaintiffs to resubmit a building plan that would provide Defendants an opportunity to cover up their negligence in approving the unsafe deck.  (*Id.* ¶¶ 76, 80.)  Fazekas negligently or maliciously approved the building plan despite the discrepancy between the approved architectural rendering and the engineered Detail 29, and despite the proximity of high tension electric wires.  (*Id.* ¶ 80.)  Taylor and Fazekas conspired with Almandinger and Mike B. to repudiate already approved work and to refuse Plaintiffs' request for a variance.  (*Id.* ¶ 81.)  Taylor prepared false reports and misrepresented the City's interactions with Plaintiffs.  (*Id.* ¶ 82.)  All Defendants are allegedly responsible for the illegal polices and practices to which Plaintiffs are being subjected by the City.  (*Id.* ¶ 83.)

      Plaintiffs assert the following claims: (1) declaratory relief; (2) violation of

due process and equal protection; (3) violation of Cal. Civil Code §§ 52 and 52.1; and (4) tort claims for "breach of duty, intentional tort, [and] negligence." (*Id.* ¶¶ 85-93.) They seek declaratory and injunctive relief "declaring illegal Defendants' policies, practices, and customs of reckless abuse of Beaumont Municipal Ordinances such as the abusive enforcement of Code sections 8.32.060 and 8.32.070 used to oppress, intimidate, and harass by the employment of a debt collection agency without procedural due process"; an injunction against Resolution No. 2021-42; and damages. (*Id.* at 34-35.)

### III.
### REQUEST FOR JUDICIAL NOTICE

Defendants request that the court take judicial notice of the following documents: (1) a grant deed transferring the property at issue to N. Iloputaife; (2) certain provisions of the Beaumont Municipal Code and California Code of Regulations; (3) the complaint, cross-complaint, and docket in the action *Iloputaife v. City of Beaumont,* Riverside County Superior Court No. CVR1215090 ("State Court Action"); and (4) Beaumont City Council Resolution No. 2021-04, a copy of which was submitted as an exhibit to the original complaint. (Dkt. No. 27 at 1-2.)

Defendants' Request for Judicial Notice is GRANTED and the Court takes judicial notice of these documents as matters of public record. *See* Fed. R. Evid. 201(b); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts."); *Mann v. Nationstar Mtg., LLC*, 632 Fed. Appx. 410, 412 (9th Cir. Jan. 28, 2016) (documents on file at county recorder's office, including deed of trust, were properly subject to judicial notice); *Colony Cove Props. v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011) (taking judicial notice of city council resolution, contents of which were not in dispute); *Tollis Inc. v. Cty. of San Diego,* 505 F.3d 935, 937 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects

for judicial notice.") (citing *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006)).

## IV.

## **LEGAL STANDARDS**

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citations omitted).

The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

A *pro se* complaint is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). Nevertheless, "[u]nder Ninth Circuit case law, district

courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*).

## V.

## **MOTION TO DISMISS**

Defendants move for dismissal of the FAC on the grounds that: (1) the court lacks jurisdiction over Plaintiffs' declaratory relief claim; (2) the court should abstain from exercising jurisdiction over this action under *Younger v. Harris*, 401 U.S. 37 (1971); (3) the FAC fails to state a procedural due process claim; (4) the FAC fails to state an equal protection claim; (5) most of the claims against Defendant Taylor are barred by prosecutorial immunity; (6) the individual Defendants are entitled to qualified immunity; (7) the state law claims are subject to dismissal for failure to allege compliance with the claims presentation requirement of the California Tort Claims Act; (8) the FAC fails to state claims under the Unruh Act or the Bane Act and fails to state a tort claim; and (9) the state law claims are barred by various immunities set forth in the California Government Code.

Defendants also request that the court strike Defendant Fazekas & Assoc. from the FAC under Fed. R. Civ. 12(f) on the ground that the order dismissing the original complaint did not grant Plaintiffs leave to add a new party.[5]

As set forth below, the court finds that *Younger* abstention is proper and therefore will not address Defendants' other arguments for dismissal.

## VI.

## **DISCUSSION**

In general, a federal court should not interfere with ongoing state proceedings. *Younger*, 401 U.S. at 44–45. Abstention from interference with

---

[5] Defendants' motion to strike is DENIED. Plaintiffs represent in their opposition that Fazekas & Assoc. is substituted for a Doe defendant. (Opp. at 8.)

10

pending state proceedings is appropriate if the proceedings are ongoing, implicate important state interests, and afford an adequate opportunity to raise federal constitutional questions. *Middlesex County Ethics Commission v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982). *Younger* abstention applies to the following categories of cases: "(1) 'parallel, pending state criminal proceeding[s],' (2) 'state civil proceedings that are akin to criminal prosecutions,' and (3) state civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'" *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,* 754 F.3d 754, 759 (9th Cir. 2014) (citations omitted). These categories were first identified in *New Orleans Public Service, Inc. v. Council of New Orleans ("NOPSI"),* 491 U.S. 350, 367–68 (1989), and are called the *NOPSI* categories.

To warrant *Younger* abstention, a state action must fall into one of the *NOPSI* categories and must also satisfy the three *Middlesex* factors. *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019). "In civil cases, therefore, *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink,* 754 F.3d at 759. If these threshold elements are satisfied, the court considers whether the federal action would have the practical effect of enjoining the state proceeding and whether an exception to *Younger* applies. *Id.*

"The critical date for purposes of determining whether abstention principles apply is the date the federal action was filed." *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc) *Id.* at 969 n. 4; *see Beltran v. California*, 871 F.2d 777 (9th Cir. 1988*)* ("*Younger* abstention requires that the federal courts abstain when state court proceedings were ongoing at the time the federal action was filed."). State proceedings are "ongoing" if they are initiated "before any proceedings of substance on the merits have taken place in the federal court."

11

*Hicks v. Miranda*, 422 U.S. 332, 349 (1975).  Put another way, "[t]he commencement of state proceedings only ceases to require federal abstention after the federal court proceedings have moved beyond an 'embryonic stage.'" *Hoye v. City of Oakland,* 653 F.3d 835, 844 (9th Cir. 2011) (citation omitted). Relevant factors for determining whether the federal action has moved past the embryonic stage include "the number of conferences held, if discovery was undertaken, any motions ruled on, and the overall amount of time that the district court spent on the case." *Credit One Bank, N.A. v Histrion*, 60 F.4th 1220, 1226 (9th Cir. 2023).

Plaintiffs commenced this action on August 26, 2021.  On November 5, 2021, they commenced the State Court Action by filing a "Verified Petition for Writ of Administrative Mandamus or in the Alternative, Petition for Writ of Mandate to Compel Duty to Exercise Discretion" against the City, the Beaumont City Council, Taylor, Fazekas, Almandinger, and McCarthy.  (Dkt. No. 27 at 24-43.)  A year later, on November 14, 2022, the City filed a cross-complaint for appointment of a receiver, public nuisance, and violations of the City's municipal ordinances.  (*Id.* at 45-64.)

When Plaintiffs filed their mandamus petition in state court, this action had been pending for two and a half months and was still at an "embryonic stage."  *Id.* Defendants' motion to dismiss the complaint was not yet fully briefed.  (*See* Dkt. Nos. 7, 16, 17.)  This court had issued routine scheduling orders and denied a request for appointment of counsel (Dkt. Nos. 6, 13, 15), but it had not addressed any substantive issue.  Since no proceedings of substance had occurred in this action when the State Court Action was filed, the State Court Action is considered "ongoing" for purposes *of Younger* abstention.[6]  *See Credit One Bank,* 60 F. 4th

---

[6] Even by the time the City's cross-complaint was filed on November 14, 2022, this action was still in the pleading stage and no discovery or conferences had taken place.

12

at 1226 (state proceedings commenced after district court denied motion to dismiss were "ongoing" because district court's decision focused almost entirely on non-merits issues, district court had not held "a significant number of conferences," and no discovery had taken place); *Nichols v. Brown,* 945 F. Supp. 2d 1079, 1095 (C.D. Cal. 2013) (state proceedings were "ongoing" when they were initiated at a time when federal case had not progressed beyond pleading stage, defendants had not answered, no hearings had been held, and no substantive matter had been decided); *compare Nationwide Biweekly Admin. Inc. v. Owen*, 873 F.3d 716, 729 (9th Cir. 2017) (*Younger* abstention was inappropriate when federal court issued ruling on motion for preliminary injunction, addressing likelihood of success on merits, before state proceedings were filed).

In the State Court Action, Plaintiffs request issuance of a writ of mandate setting aside Resolution No. 2021-42 and lifting the stop work order, while the City seeks a receiver to take control of the Property and a declaration that the Property is a public nuisance and violates the City's municipal code. (Dkt. No. 27 at 42-42, 61-63.) This type of nuisance enforcement action is a civil enforcement proceeding within the scope of *Younger.* *NOPSI*, 491 U.S. at 368 *(Younger* abstention applies to civil enforcement proceedings)*; Herrera*, 918 F.3d at 1044-45 (state nuisance action seeking receiver, injunction against collecting rent from property, and imposition of civil penalties was civil enforcement action under *Younger*); *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1021 (9th Cir. 1999) ("Civil actions brought by a government entity to enforce nuisance laws have been held to justify *Younger* abstention.").

Under established precedent, the State Court Action implicates important state interests and satisfies the second *Middlesex* factor. *See Herrera*, 918 F.3d at 1045 (nuisance abatement action implicated important state interests); *Potrero Hills Landfill v. Cty. of Solano*, 657 F.3d 876, 884 (9th Cir. 2011) (listing "wide range of civil contexts," including nuisance abatement, that implicate "state's

unique interest in exercising its basic executive functions"). The State Court Action provides Plaintiffs with an adequate opportunity to raise federal constitutional claims. *See Kenneally v. Lungren*, 967 F.2d 329, 332-33 (9th Cir. 1992) (California's writ of mandate procedure "provides a meaningful opportunity for [a federal plaintiff] to present his constitutional claims for independent judicial review"). In fact, Plaintiffs alleged due process violations in their petition for a writ of mandate. (Dkt. No. 27 ¶¶ 23-24, 27, 32, 39, 41.)

Finally, the relief sought by Plaintiffs through this action, which includes an injunction against the enforcement of Resolution No. 2021-42 and a declaration that the Property is not a nuisance and the City's code enforcement practices are abusive (FAC 31, 34), would have the practical effect of enjoining the ongoing parallel state proceeding in which Plaintiffs seek relief against the enforcement of Resolution No. 2021-42 and the City seeks a declaration that the Property is a nuisance and appointment of a receiver. *Herrera*, 918 F.3d at 1048 (request for declaratory relief alleging that municipality committed numerous violations in assessing code violations would have same practical impact as injunctive relief on parallel state action asserting nuisance claims against owners because of preclusive effect of judgment).

Plaintiffs' claims for damages in this action, which depend on a determination that Defendants violated their constitutional rights in connection with their handling of the Permit and the code enforcement proceedings against Plaintiffs, would also interfere with the State Court Action because a federal judgment in Plaintiffs' favor would have a preclusive effect on the State Court Action. *Id.*; *see Gilbertson*, 381 F.3d at 968, 979-80 (*Younger* applies to damages suits because determination that plaintiffs' rights were violated has same practical effect as declaration or injunction on pending state proceedings).

Finally, while courts do not invoke otherwise appropriate *Younger* abstention "if there is a 'showing of bad faith, harassment, or some other

extraordinary circumstance that would make abstention inappropriate,'" *Arevalo v. Hennessy*, 882 F.3d 763, 765-66 (9th Cir. 2018) (quoting *Middlesex,* 457 U.S. at 437), Plaintiffs have not shown that any exception to *Younger* applies in this case.

Plaintiffs argue that *Younger* abstention is not warranted because the Superior Court denied their petition for a writ of mandate in the State Action and "closed the case." (Opp. at 2.) The Ninth Circuit has "reject[ed] the proposition that abstention was unwarranted if the state proceedings had terminated after the federal filing but before the federal decision regarding abstention." *M&A Gabaee v. Cmty. Redevelopment Agency of City of Los Angeles,* 419 F.3d 1036, 1042 (9th Cir. 2005). Moreover, Defendants contend (though without requesting the court to take judicial notice of any court records substantiating their assertion) that the City's cross-complaint remains at issue. (Reply at 7-8.)

"[W]hen a court abstains under *Younger*, claims for injunctive and declaratory relief are typically dismissed." *Herrera*, 918 F.3d at 1042. Claims for damages, however, are not dismissed but are stayed until the state proceedings are completed. *Id.*; *Gilbertson*, 381 F.3d at 968, 975; *Amerisourcebergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).

It is therefore recommended that Plaintiff N. Iloputaife be dismissed from action pursuant to her Notice of Dismissal and this action (1) be dismissed, without prejudice, as to all claims for declaratory and injunctive relief, including Claim One in its entirety, and (2) be stayed as to the damages claim pending the resolution of the State Court Action.

## VII.

## **RECOMMENDATION**

For the reasons discussed above, it is recommended that the District Court issue an order: (1) accepting this Report's findings and recommendations; (2) dismissing Plaintiff N. Iloputaife from this action pursuant to her Notice of Dismissal; (3) granting Defendants' motion to dismiss; (4) dismissing all remaining

claims for declaratory and injunctive relief, including Claim One in its entirety, without prejudice based on *Younger* abstention; (5) staying the remaining claims for damages pending the conclusion of the State Court Action; and (6) administratively closing the case until the remaining Plaintiff E. Iloputaife, files a motion to reopen the case after the conclusion of the State Court Action.

DATED: July 3, 2023

*alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge