UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EZEKWESILI ILOPUTAIFE and
NNEKA ILOPUTAIFE,

        Plaintiffs,

        v.

CITY OF BEAUMONT et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

NO. EDCV 21-1452-JWH (AGR)


REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE

    The court submits this Report and Recommendation to the Honorable John W. Holcomb, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the court recommends the disposition set forth below in the recommendation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**

**SUMMARY OF PROCEEDINGS**

On August 26, 2021, Plaintiffs Ezekwesili Iloputaife ("E. Iloputaife") and Nneka Iloputaife ("N. Iloputaife"), proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against the City of Beaumont ("City" or "Beaumont"), Christina Taylor, Scott A. Fazekas, Michael Almandinger, Kelly McCarthy, and Does 1 through 20.  (Dkt. Nos. 1, 3.)

Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 7.)  On December 9, 2022, the District Court  accepted the recommendations in the Report and Recommendation issued on June 24, 2022, and dismissed the complaint with leave to amend.[1]  (Dkt. Nos. 21, 23.)

On January 6, 2023, Plaintiffs filed a First Amended Complaint ("FAC") against the City, Taylor, Fazekas, Scott Fazekas & Associates, Inc. ("Fazekas & Assoc."), and Does 1 through 20.  (Dkt. No. 25.)  On January 20, 2023, the City, Taylor, and Fazekas moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[2]  (Dkt. No. 26.)  On February 23, 2023, Plaintiffs filed an opposition.  (Dkt. No. 32.)  On March 9, 2023, Defendants filed a reply.  (Dkt. No. 33.)  The motion was taken under submission.

On June 27, 2023, Plaintiff N. Iloputaife filed a notice of dismissal of "her portion of the lawsuit in its entirety."  (Dkt. No. 34.)

**II.**

**ALLEGATIONS IN FAC**

Plaintiffs are a married couple living in Beaumont.  (FAC ¶¶ 1-2.)  Plaintiff N. Iloputaife "primarily own[s]" the house where they live (sometimes "Property").  (*Id.* at 2-3.)  Defendant Fazekas & Assoc. is a California corporation "under

---

[1]    A few claims were dismissed without leave to amend.

[2]    Fazekas & Assoc. has not been served with process and has not appeared.

1   contract" with the City and the Beaumont Community Development Department.

2   (*Id.* ¶ 3.)  Defendant Fazekas is the founder and managing director of Fazekas &

3   Assoc.  (*Id.* ¶ 4.)  Defendant Taylor is the Community Development Director for

4   the City and is in charge of Beaumont Building and Safety Code enforcement.

5   (*Id.* ¶ 5.)

6          On December 26, 2016, Fazekas & Assoc. recommended approval of

7   building plans for an addition to the Property and, on May 1, 2017, the City issued

8   Permit No. BP2017-00691 ("Permit").  (*Id.* ¶ 13.)  Plaintiff E. Iloputaife did the

9   construction himself.  (*Id.*)  Fazekas & Assoc. and the City negligently approved a

10  patio that was susceptible to radiation due to the proximity of high tension electric

11  wires.  (*Id.* ¶ 14.)  In May 2018, Plaintiffs started to add a protective cover over the

12  patio for safety, as did most of their neighbors.  (*Id.*)  After Plaintiff E. Iloputaife

13  told building inspector Almandinger that he blamed the City for its negligence, the

14  City sent Plaintiffs a letter attempting to invalidate the Permit.  (*Id.*)

15         Because the patio cover was not within the scope of the Permit,

16  Almandinger advised Plaintiff E. Iloputaife to stop work on it and seek a variance

17  while working on other areas of the project.  (*Id.* ¶ 16.)  Plaintiff E. Iloputaife tried

18  to contact Taylor to obtain the required variance, but she ignored him and the City

19  sent him another letter attempting to invalidate the Permit.  (*Id.* ¶ 17.)  Around

20  August 13, 2019, Plaintiff E. Iloputaife sought help from Beaumont Mayor Mike

21  Lara, who arranged a meeting with Taylor.  (*Id.* ¶ 18.)

22         In the meantime, on August 15, 2018, Almandinger and building inspector

23  "Mike B." inspected and approved Plaintiff's "main house deck," which included a

24  second story dormer construction.  (*Id.* ¶ 19.)

25         At the meeting with City officials, Plaintiff E. Iloputaife suggested an on-site

26  evaluation of the need for a variance for the patio cover, and the City agreed.  (*Id.*

27  ¶ 20.)  On September 4, 2019, Fazekas, Almandinger, and Mike B. visited the

28  Property but refused to discuss any issues during the visit.  (*Id.* ¶ 24.)  On

3

1   September 10, 2019, Fazekas wrote Plaintiffs a letter repudiating a portion of the

2   dormer construction that was already finished and had been approved by

3   Almandinger and Mike B.  (*Id.* ¶ 25.)  Plaintiffs contend that Fazekas attempted to

4   cover up his company's negligence in recommending approval of the unsafe patio

5   by requesting resubmitted plans based on a fabricated problem.  (*Id.*)

6       According to Plaintiffs, the only reason for the on-site visit was to evaluate

7   the need for a variance for the unpermitted patio cover, and the second story

8   dormer construction had already been inspected and approved by Almandinger

9   and Mike B.  (*Id.* ¶¶ 26-28.)  Consequently, Plaintiff E. Iloputaife continued to work

10  on the construction while he attempted to resolve the issues raised in Fazekas'

11  letter.  (*Id.* ¶ 29.)

12      On March 18, 2020, the City sent Plaintiffs a letter stating that the Permit

13  had expired.  (*Id.* ¶ 30.)  On March 19, 2020, the City sent a "courtesy notice" of

14  "nine unfounded ordinance violations" at the Property.  (*Id.*)  When Plaintiffs

15  sought clarification, code enforcement officer Jack Huntsman inspected the

16  Property and found no violations.  (*Id.* ¶¶ 30, 46.)

17      On August 10, 2020, McCarthy issued a citation for violations of Beaumont

18  Municipal Code ("BMC") 8.32.060 and BMC 8.32.070, and proceeded to issue

19  daily citations for the same two violations.[3]  (*Id.* ¶ 31.)  Plaintiffs' requests for

20  administrative review of the citations were ignored.  (*Id.* ¶¶ 31-32.)  The City

21  engaged a debt collection agency which sent harassing letters to Plaintiff N.

22  Iloputaife, demanding $1,300 per day.  (*Id.* ¶ 32.)  On February 26, 2021,

23  McCarthy issued a stop work notice at the Property.  (*Id.* ¶ 33.)  McCarthy told

24  Plaintiff E. Iloputaife that the City had discretion not to respond to his requests for

25

26          [3]      BMC § 8.32.060 provides that premises in violation of certain
27  building codes or subject to certain enumerated conditions are a public nuisance.
    BMC § 8.32.070 provides that premises maintained contrary to the City's zoning
28  ordinance are a public nuisance.  (Dkt. No. 27 at 19.)

4

1   administrative review, and said: "You Nigerians come over here and behave like
2   you are smarter than everyone else." (*Id.*)

3        After receiving the stop work notice, Plaintiff E. Iloputaife complained to the
4   city manager that Taylor was ignoring him and demanded an administrative
5   hearing. (*Id.* ¶ 34.)  On March 2, 2021, following a telephone agreement with
6   Taylor to remove unpermitted construction, Plaintiff E. Iloputaife dismantled the
7   unfinished patio cover, which according to Plaintiffs was the only unpermitted
8   construction, and informed Taylor of the removal the next day. (*Id.* ¶ 35.)  The City
9   nevertheless continued to issue daily citations while denying Plaintiffs a hearing.
10  (*Id.* ¶ 37.)

11       On March 18, 2021, Taylor allegedly fabricated evidence in the form of a
12  permit inspection history report that contained false and ambiguous information
13  meant to invalidate the Permit, repudiate already approved construction, and
14  provide a reason to require Plaintiffs to submit a modified building plan for a new
15  permit. (*Id.* ¶ 37.)  The report omitted "crucial inspection records of July 18, 2017,
16  June 17, 2019, and August 5, 2019," and stated that the Permit expired on
17  February 11, 2019.  (*Id.* ¶¶ 37, 53.)

18       Taylor eventually acknowledged Plaintiffs' request for an administrative
19  hearing, but the City continued to issue daily citations until April 20, 2021.  (*Id.*
20  ¶ 39.)  Taylor scheduled a virtual hearing for April 22, 2021, and Plaintiffs and
21  Taylor emailed each other their evidence.  (*Id.* ¶¶ 40-41.)  Late on April 21, 2021,
22  Taylor postponed the meeting to May 6, 2021, with the explanation that one of the
23  panelists was ill and she could not find a replacement.  (*Id.* ¶ 42.)

24       The hearing was held on May 6, 2021.  Fazekas, Almandinger, Mike B. and
25  McCarthy were absent, although Plaintiff had formally requested their presence
26  as witnesses.  (*Id.* ¶¶ 41, 44.)  Taylor submitted a "staff report" with attached
27  "uncorroborated photo evidence."  (*Id.* ¶ 45.)  Plaintiffs presented their case,
28  including undisputed evidence of an inspection performed by Almandinger and

5

1  Mike B. on the dormer construction on August 15, 2018.  (*Id.* ¶¶ 45-48, 51-53.)
2  The administrative panel nevertheless accepted Taylor's false assertion that an
3  inspection was scheduled for August 15, 2018, but nobody answered the door.
4  (*Id.* ¶ 48; *see also Id.* ¶¶ 53-54.)  The administrative panel's decision against
5  Plaintiffs incorporated verbatim the uncorroborated staff report and the
6  "debunked" courtesy notice, and falsified the attendance list for the hearing.  (*Id.*
7  ¶¶ 45, 54, 55-57.)

8       Plaintiffs filed a notice of appeal and were required to pay $1,945.98 before
9  it was processed.  (*Id.* ¶ 59.)  They submitted written testimony and received the
10  City's responses.  (*Id.* ¶¶ 61-62.)  The Beaumont City Council held an appeal
11  hearing on July 20, 2021.  (*Id.* ¶ 63.)  Plaintiff E. Iloputaife testified and presented
12  evidence.  (*Id.* ¶¶ 67-68.)  Fazekas and McCarthy did not attend the hearing,
13  although the City Council's decision wrongly listed Fazekas as present.  (*Id.* ¶ 66.)
14  Almandinger was present and testified "in the affirmative to the August 15, 2018
15  inspection and approval."  (*Id.* ¶¶ 69-70.)  The City Council panel "asked leading
16  questions of hostile witnesses" and did not allow Plaintiffs to cross-examine them.
17  (*Id.* at ¶ 71.)

18       On August 3, 2021, the City Council issued Resolution No. 2021-42
19  affirming the administrative decision.  (*Id.* ¶ 77; *see* Dkt. No. 3 at 110-19.)[4]  It
20  found that: substantial evidence supported a finding that BMC §§ 8.32.060 and
21  8.32.070 were violated; the scope of the construction exceeded the work
22  permissible under the plans; work was done after the Permit expired; and the
23  second story rear terrace and second story dormer were not in compliance with
24  what the City had approved and constituted a public nuisance under BMC
25  § 8.32.420.  (Dkt. No. 3 at 116-17.)  The City Council found that Plaintiffs were
26  liable for fines of $76,060 and attorneys fees/costs in the amount of $27, 823.65,
27  _____
28       [4]  As discussed below, the court has taken judicial notice of Resolution No. 2021-42.

but reduced the total amount to $27,823.65 if paid within 90 days.  (*Id.* at 117; FAC ¶ 78.)  The Resolution directed Plaintiffs to stop all construction work and provided that the City would seek an order for abatement of the nuisance or appointment of a receiver unless (1) within 30 days, Plaintiffs provided a report from a licensed structural engineer certifying whether the property was safe for habitation; (2) within 90 days, Plaintiffs had a licensed structural engineer prepare, submit and obtain approval of plans to correct the violations and obtained a permit to complete the work; and (3) within 270 days, Plaintiffs completed construction and obtained final inspections and approval.  (Dkt. No. 3 at 117-18.)  Plaintiffs contend that Resolution No. 2021-42 relied on clearly refuted evidence and was obviously biased.  (FAC ¶ 77.)

Plaintiffs complain that within one year Defendants issued a total of 60 unfounded citations for alleged violations of BMC 8.32.060 and Zoning Ordinance 8.32.070.  (*Id.* ¶ 72.)  Defendants continued to issue daily citations for the same violations while denying Plaintiffs a hearing, and engaged a collection agency to coerce Plaintiffs into submission by demanding a daily fine of $1,300.  (*Id.* ¶¶ 73-76, 79.)  Defendants did so to force Plaintiffs to resubmit a building plan that would provide Defendants an opportunity to cover up their negligence in approving the unsafe deck.  (*Id.* ¶¶ 76, 80.)  Fazekas negligently or maliciously approved the building plan despite the discrepancy between the approved architectural rendering and the engineered Detail 29, and despite the proximity of high tension electric wires.  (*Id.* ¶ 80.)  Taylor and Fazekas conspired with Almandinger and Mike B. to repudiate already approved work and to refuse Plaintiffs' request for a variance.  (*Id.* ¶ 81.)  Taylor prepared false reports and misrepresented the City's interactions with Plaintiffs.  (*Id.* ¶ 82.)  All Defendants are allegedly responsible for the illegal polices and practices to which Plaintiffs are being subjected by the City.  (*Id.* ¶ 83.)

Plaintiffs assert the following claims: (1) declaratory relief; (2) violation of

7

1    due process and equal protection; (3) violation of Cal. Civil Code §§ 52 and 52.1;

2    and (4) tort claims for "breach of duty, intentional tort, [and] negligence." (*Id.*

3    ¶¶ 85-93.) They seek declaratory and injunctive relief "declaring illegal

4    Defendants' policies, practices, and customs of reckless abuse of Beaumont

5    Municipal Ordinances such as the abusive enforcement of Code sections

6    8.32.060 and 8.32.070 used to oppress, intimidate, and harass by the

7    employment of a debt collection agency without procedural due process"; an

8    injunction against Resolution No. 2021-42; and damages. (*Id.* at 34-35.)

9                                           III.

10              **REQUEST FOR JUDICIAL NOTICE**

11         Defendants request that the court take judicial notice of the following

12   documents: (1) a grant deed transferring the property at issue to N. Iloputaife; (2)

13   certain provisions of the Beaumont Municipal Code and California Code of

14   Regulations; (3) the complaint, cross-complaint, and docket in the action

15   *Iloputaife v. City of Beaumont,* Riverside County Superior Court No. CVR1215090

16   ("State Court Action"); and (4) Beaumont City Council Resolution No. 2021-04, a

17   copy of which was submitted as an exhibit to the original complaint. (Dkt. No. 27

18   at 1-2.)

19         Defendants' Request for Judicial Notice is GRANTED and the Court takes

20   judicial notice of these documents as matters of public record. *See* Fed. R. Evid.

21   201(b); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well

22   established that we may take judicial notice of judicial proceedings in other

23   courts."); *Mann v. Nationstar Mtg., LLC*, 632 Fed. Appx. 410, 412 (9th Cir. Jan.

24   28, 2016) (documents on file at county recorder's office, including deed of trust,

25   were properly subject to judicial notice); *Colony Cove Props. v. City of Carson*,

26   640 F.3d 948, 954 n.3 (9th Cir. 2011) (taking judicial notice of city council

27   resolution, contents of which were not in dispute); *Tollis Inc. v. Cty. of San Diego,*

28   505 F.3d 935, 937 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects

1  for judicial notice.") (citing *Santa Monica Food Not Bombs v. City of Santa*

2  *Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006)).

3                                      IV.

4                           **LEGAL STANDARDS**

5       "To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint

6  must contain sufficient factual matter, accepted as true, to 'state a claim to relief

7  that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

8  omitted).  "A claim has facial plausibility when the plaintiff pleads factual content

9  that allows the court to draw the reasonable inference that the defendant is liable

10 for the misconduct alleged.  The plausibility standard is not akin to a 'probability

11 requirement,' but it asks for more than a sheer possibility that a defendant has

12 acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with'

13 a defendant's liability, it 'stops short of the line between possibility and plausibility

14 of "entitlement to relief."'" *Id.* (citations omitted).

15      The tenet that a court must accept as true all of the allegations contained in

16 a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

17 elements of a cause of action, supported by mere conclusory statements, do not

18 suffice.  *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In

19 sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual

20 content,' and reasonable inferences from that content, must be plausibly

21 suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*,

22 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

23      A *pro se* complaint is to be liberally construed.  *Erickson v. Pardus*, 551

24 U.S. 89, 94 (2007) (per curiam).  Before dismissing a *pro se* civil rights complaint

25 for failure to state a claim, the plaintiff should be given a statement of the

26 complaint's deficiencies and an opportunity to cure them unless it is clear the

27 deficiencies cannot be cured by amendment.  *Eldridge v. Block*, 832 F.2d 1132,

28 1135-36 (9th Cir. 1987).  Nevertheless, "[u]nder Ninth Circuit case law, district

1  courts are only required to grant leave to amend if a complaint can possibly be

2  saved.  Courts are not required to grant leave to amend if a complaint lacks merit

3  entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*).

4  **V.**

5  **MOTION TO DISMISS**

6  Defendants move for dismissal of the FAC on the grounds that: (1) the

7  court lacks jurisdiction over Plaintiffs' declaratory relief claim; (2) the court should

8  abstain from exercising jurisdiction over this action under *Younger v. Harris*, 401

9  U.S. 37 (1971); (3) the FAC fails to state a procedural due process claim; (4) the

10  FAC fails to state an equal protection claim; (5) most of the claims against

11  Defendant Taylor are barred by prosecutorial immunity; (6) the individual

12  Defendants are entitled to qualified immunity; (7) the state law claims are subject

13  to dismissal for failure to allege compliance with the claims presentation

14  requirement of the California Tort Claims Act; (8) the FAC fails to state claims

15  under the Unruh Act or the Bane Act and fails to state a tort claim; and (9) the

16  state law claims are barred by various immunities set forth in the California

17  Government Code.

18  Defendants also request that the court strike Defendant Fazekas & Assoc.

19  from the FAC under Fed. R. Civ. 12(f) on the ground that the order dismissing the

20  original complaint did not grant Plaintiffs leave to add a new party.[5]

21  As set forth below, the court finds that *Younger* abstention is proper and

22  therefore will not address Defendants' other arguments for dismissal.

23  **VI.**

24  **DISCUSSION**

25  In general, a federal court should not interfere with ongoing state

26  proceedings.  *Younger*, 401 U.S. at 44–45.  Abstention from interference with

27

28  [5]    Defendants' motion to strike is DENIED.  Plaintiffs represent in their opposition that Fazekas & Assoc. is substituted for a Doe defendant. (Opp. at 8.)

1    pending state proceedings is appropriate if the proceedings are ongoing,

2    implicate important state interests, and afford an adequate opportunity to raise

3    federal constitutional questions. *Middlesex County Ethics Commission v. Garden*

4    *State Bar Ass'n,* 457 U.S. 423, 432 (1982). *Younger* abstention applies to the

5    following categories of cases: "(1) 'parallel, pending state criminal proceeding[s],'

6    (2) 'state civil proceedings that are akin to criminal prosecutions,' and (3) state

7    civil proceedings that 'implicate a State's interest in enforcing the orders and

8    judgments of its courts.'" *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,*

9    754 F.3d 754, 759 (9th Cir. 2014) (citations omitted). These categories were first

10    identified in *New Orleans Public Service, Inc. v. Council of New Orleans*

11    *("NOPSI"),* 491 U.S. 350, 367–68 (1989), and are called the *NOPSI* categories.

12          To warrant *Younger* abstention, a state action must fall into one of the

13    *NOPSI* categories and must also satisfy the three *Middlesex* factors. *Herrera v.*

14    *City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019). "In civil cases, therefore,

15    *Younger* abstention is appropriate only when the state proceedings: (1) are

16    ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in

17    enforcing the orders and judgments of its courts, (3) implicate an important state

18    interest, and (4) allow litigants to raise federal challenges." *ReadyLink,* 754 F.3d

19    at 759. If these threshold elements are satisfied, the court considers whether the

20    federal action would have the practical effect of enjoining the state proceeding

21    and whether an exception to *Younger* applies. *Id.*

22          "The critical date for purposes of determining whether abstention principles

23    apply is the date the federal action was filed." *Gilbertson v. Albright*, 381 F.3d

24    965, 969 n.4 (9th Cir. 2004) (en banc) *Id.* at 969 n. 4; *see Beltran v. California*,

25    871 F.2d 777 (9th Cir. 1988*)* ("*Younger* abstention requires that the federal courts

26    abstain when state court proceedings were ongoing at the time the federal action

27    was filed."). State proceedings are "ongoing" if they are initiated "before any

28    proceedings of substance on the merits have taken place in the federal court."

1   *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).  Put another way, "[t]he

2   commencement of state proceedings only ceases to require federal abstention

3   after the federal court proceedings have moved beyond an 'embryonic stage.'"

4   *Hoye v. City of Oakland,* 653 F.3d 835, 844 (9th Cir. 2011) (citation omitted).

5   Relevant factors for determining whether the federal action has moved past the

6   embryonic stage include "the number of conferences held, if discovery was

7   undertaken, any motions ruled on, and the overall amount of time that the district

8   court spent on the case."  *Credit One Bank, N.A. v Histrion*, 60 F.4th 1220, 1226

9   (9th Cir. 2023).

10        Plaintiffs commenced this action on August 26, 2021.  On November 5,

11   2021, they commenced the State Court Action by filing a "Verified Petition for Writ

12   of Administrative Mandamus or in the Alternative, Petition for Writ of Mandate to

13   Compel Duty to Exercise Discretion" against the City, the Beaumont City Council,

14   Taylor, Fazekas, Almandinger, and McCarthy.  (Dkt. No. 27 at 24-43.)  A year

15   later, on November 14, 2022, the City filed a cross-complaint for appointment of a

16   receiver, public nuisance, and violations of the City's municipal ordinances.  (*Id.* at

17   45-64.)

18        When Plaintiffs filed their mandamus petition in state court, this action had

19   been pending for two and a half months and was still at an "embryonic stage."  *Id.*

20   Defendants' motion to dismiss the complaint was not yet fully briefed.  (*See* Dkt.

21   Nos. 7, 16, 17.)  This court had issued routine scheduling orders and denied a

22   request for appointment of counsel (Dkt. Nos. 6, 13, 15), but it had not addressed

23   any substantive issue.  Since no proceedings of substance had occurred in this

24   action when the State Court Action was filed, the State Court Action is considered

25   "ongoing" for purposes *of Younger* abstention.[6]  *See Credit One Bank,* 60 F. 4th

---

6        Even by the time the City's cross-complaint was filed on November 14, 2022, this action was still in the pleading stage and no discovery or conferences had taken place.

1  at 1226 (state proceedings commenced after district court denied motion to

2  dismiss were "ongoing" because district court's decision focused almost entirely

3  on non-merits issues, district court had not held "a significant number of

4  conferences," and no discovery had taken place); *Nichols v. Brown,* 945 F. Supp.

5  2d 1079, 1095 (C.D. Cal. 2013) (state proceedings were "ongoing" when they

6  were initiated at a time when federal case had not progressed beyond pleading

7  stage, defendants had not answered, no hearings had been held, and no

8  substantive matter had been decided); *compare Nationwide Biweekly Admin. Inc.*

9  *v. Owen*, 873 F.3d 716, 729 (9th Cir. 2017) (*Younger* abstention was

10  inappropriate when federal court issued ruling on motion for preliminary injunction,

11  addressing likelihood of success on merits, before state proceedings were filed).

12      In the State Court Action, Plaintiffs request issuance of a writ of mandate

13  setting aside Resolution No. 2021-42 and lifting the stop work order, while the City

14  seeks a receiver to take control of the Property and a declaration that the Property

15  is a public nuisance and violates the City's municipal code.  (Dkt. No. 27 at 42-42,

16  61-63.)  This type of nuisance enforcement action is a civil enforcement

17  proceeding within the scope of *Younger.  NOPSI*, 491 U.S. at 368 *(Younger*

18  abstention applies to civil enforcement proceedings)*; Herrera*, 918 F.3d at 1044-

19  45 (state nuisance action seeking receiver, injunction against collecting rent from

20  property, and imposition of civil penalties was civil enforcement action under

21  *Younger*); *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017, 1021 (9th

22  Cir. 1999) ("Civil actions brought by a government entity to enforce nuisance laws

23  have been held to justify *Younger* abstention.").

24      Under established precedent, the State Court Action implicates important

25  state interests and satisfies the second *Middlesex* factor.  *See Herrera*, 918 F.3d

26  at 1045 (nuisance abatement action implicated important state interests); *Potrero*

27  *Hills Landfill v. Cty. of Solano*, 657 F.3d 876, 884 (9th Cir. 2011) (listing "wide

28  range of civil contexts," including nuisance abatement, that implicate "state's

1    unique interest in exercising its basic executive functions").  The State Court

2    Action provides Plaintiffs with an adequate opportunity to raise federal

3    constitutional claims.  *See Kennealy v. Lungren*, 967 F.2d 329, 332-33 (9th Cir.

4    1992) (California's writ of mandate procedure "provides a meaningful opportunity

5    for [a federal plaintiff] to present his constitutional claims for independent judicial

6    review").  In fact, Plaintiffs alleged due process violations in their petition for a writ

7    of mandate.  (Dkt. No. 27 ¶¶ 23-24, 27, 32, 39, 41.)

8         Finally, the relief sought by Plaintiffs through this action, which includes an

9    injunction against the enforcement of Resolution No. 2021-42 and a declaration

10   that the Property is not a nuisance and the City's code enforcement practices are

11   abusive (FAC 31, 34), would have the practical effect of enjoining the ongoing

12   parallel state proceeding in which Plaintiffs seek relief against the enforcement of

13   Resolution No. 2021-42 and the City seeks a declaration that the Property is a

14   nuisance and appointment of a receiver.  *Herrera*, 918 F.3d at 1048 (request for

15   declaratory relief alleging that municipality committed numerous violations in

16   assessing code violations would have same practical impact as injunctive relief on

17   parallel state action asserting nuisance claims against owners because of

18   preclusive effect of judgment).

19        Plaintiffs' claims for damages in this action, which depend on a

20   determination that Defendants violated their constitutional rights in connection

21   with their handling of the Permit and the code enforcement proceedings against

22   Plaintiffs, would also interfere with the State Court Action because a federal

23   judgment in Plaintiffs' favor would have a preclusive effect on the State Court

24   Action.  *Id.*; *see Gilbertson*, 381 F.3d at 968, 979-80 (*Younger* applies to

25   damages suits because determination that plaintiffs' rights were violated has

26   same practical effect as declaration or injunction on pending state proceedings).

27        Finally, while courts do not invoke otherwise appropriate *Younger*

28   abstention "if there is a 'showing of bad faith, harassment, or some other

                                          14

1   extraordinary circumstance that would make abstention inappropriate,'" *Arevalo v.*

2   *Hennessy*, 882 F.3d 763, 765-66 (9th Cir. 2018) (quoting *Middlesex,* 457 U.S. at

3   437), Plaintiffs have not shown that any exception to *Younger* applies in this case.

4          Plaintiffs argue that *Younger* abstention is not warranted because the

5   Superior Court denied their petition for a writ of mandate in the State Action and

6   "closed the case."  (Opp. at 2.)  The Ninth Circuit has "reject[ed] the proposition

7   that abstention was unwarranted if the state proceedings had terminated after the

8   federal filing but before the federal decision regarding abstention."  *M&A Gabaee*

9   *v. Cmty. Redevelopment Agency of City of Los Angeles,* 419 F.3d 1036, 1042

10  (9th Cir. 2005).  Moreover, Defendants contend (though without requesting the

11  court to take judicial notice of any court records substantiating their assertion) that

12  the City's cross-complaint remains at issue.  (Reply at 7-8.)

13         "[W]hen a court abstains under *Younger*, claims for injunctive and

14  declaratory relief are typically dismissed."  *Herrera*, 918 F.3d at 1042.  Claims for

15  damages, however, are not dismissed but are stayed until the state proceedings

16  are completed.  *Id.*; *Gilbertson*, 381 F.3d at 968, 975; *Amerisourcebergen Corp. v.*

17  *Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).

18         It is therefore recommended that Plaintiff N. Iloputaife be dismissed from

19  action pursuant to her Notice of Dismissal and this action (1) be dismissed,

20  without prejudice, as to all claims for declaratory and injunctive relief, including

21  Claim One in its entirety, and (2) be stayed as to the damages claim pending the

22  resolution of the State Court Action.

23                                **VII.**

24                         **RECOMMENDATION**

25         For the reasons discussed above, it is recommended that the District Court

26  issue an order: (1) accepting this Report's findings and recommendations; (2)

27  dismissing Plaintiff N. Iloputaife from this action pursuant to her Notice of

28  Dismissal; (3) granting Defendants' motion to dismiss; (4) dismissing all remaining

claims for declaratory and injunctive relief, including Claim One in its entirety, without prejudice based on *Younger* abstention; (5) staying the remaining claims for damages pending the conclusion of the State Court Action; and (6) administratively closing the case until the remaining Plaintiff E. Iloputaife, files a motion to reopen the case after the conclusion of the State Court Action.

DATED: July 3, 2023

_____
ALICIA G. ROSENBERG
United States Magistrate Judge